**CITY OF AMARILLO et al., Petitioners,**

v.

**AMARILLO LODGE NO. 731, A. F. & A. M. et al., Respondents.**

**No. B–3147.**

Supreme Court of Texas.

Nov. 29, 1972.

Rehearing Denied Jan. 17, 1973.

J. Bruce Aycock, City Atty., Fred Griffin, Asst. City Atty., Amarillo, for petitioners.

Folley, Snodgrass & Calhoun, Roy C. Snodgrass, Jr., Amarillo, for respondents.

WALKER, Justice.

This is another of a long line of cases in which various fraternal organizations have asserted that their property is exempt from the payment of ad valorem taxes. The trial court concluded that the property now in question is not exempt, but a divided Court of Civil Appeals held to the contrary. 473 S.W.2d 264. We agree with the trial court.

The suit was filed by the City of Amarillo, Amarillo Independent School District, Amarillo College District and Amarillo Hospital District, petitioners, against Amarillo Lodge No. 731, Ancient Free and Accepted Masons, Amarillo Chapter No. 196, Royal Arch Masons, Amarillo Council No. 134, Royal and Select Masters, and Amarillo Commandery No. 48, Knights Templar, respondents, to collect delinquent ad valorem taxes for 1968 on three lots in the City of Amarillo. It was tried to the court on a stipulation of facts, and no findings of fact or conclusions of law were requested or filed.

Respondents contend that the property is exempt under Sections 7 and 22 of Art. 7150, Vernon's Ann.Tex.St. For reasons that are stated below, the provisions of Section 7, which are set out in the margin,[1] are not of controlling importance in this case. Section 22, which was added in 1967, provides as follows:

Sec. 22. The property of all fraternal organizations shall be exempt from taxation for so long as the property is owned and used for charitable, benevolent, religious and educational purposes, and is not in whole or in part leased out to others, or otherwise used with a view to profit.

The term "Fraternal Organization" as used in this Act shall mean, "A lodge, or lodges, engaged in charitable, benevolent, religious, and educational work."

However, this Act shall not apply to any fraternal organization or lodge which pays to its members, either directly or indirectly, any type of insurance benefit, be it life, health, accident or death benefit, or any other type of insurance; neither shall any organization which shall directly or indirectly participate or engage in any political activity, either in support of or in opposition to any candidate seeking any public office, have or be entitled to benefits as provided under this Act.

The stipulation of facts is quite specific with respect to certain matters and somewhat general with respect to others. Each respondent is chartered by and subordinate to a grand lodge that is incorporated under the laws of Texas. See Arts. 1399–1400, V.A.T.S. The purpose clauses in the charters of the several grand lodges, one of which is quoted in the margin,[2] are sub-

1. The following property shall be exempt from taxation, to-wit:
   *     *     *     *     *
   7. Public charities.—All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this article is one

which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons.

   *     *     *     *     *

2. The said Grand Lodge and this corporation is formed for charitable and benevolent purposes, and to cement bonds of good fellowship and brotherly love among

stantially identical. Respondents are each engaged in the work of the Masonic order. They make no gain or profit, and their incomes are derived solely from membership dues and initiation fees.

The property in question is owned by respondents jointly, but their interests are not entirely equal. A brick building was constructed on the premises in 1956, the cost being borne by respondents in proportion to their ownership of the lots. Each respondent holds its meetings in the building, and each pays its pro rata share of the expenses and upkeep of the building. No rent is paid by one to the other, and no part of the building or premises is rented, used or occupied by anyone else.

None of the lodges, grand or subordinate, is permitted to make special assessments on its members. None of them pay their members any type of insurance or other monetary benefits, and none engages in any political activity. They do not maintain club rooms, bathrooms, restaurants, or amusement devices, and they do not sell or serve soft drinks or intoxicating beverages. They give no dances and do not sponsor regular social activities. Dinners or other meals are served occasionally by one or more of the local lodges to members and guests, but the expense of these meals is borne entirely by the lodges. Respondents each have only one or two paid employees, who do secretarial work or look after the building.

Respondents each contribute to their respective grand lodges a certain proportion of the amounts they receive from dues and initiation fees. These proportions range from 12 to 40 per cent in the case of initiation fees and from 34 to 43 per cent in the case of dues, and the funds so received from the local lodges are used by the grand lodges to operate or support various charitable enterprises. Respondents use the remainder of the money received by them to pay their expenses of operation,

including the cost of maintaining the building, and any balance is devoted to such charitable and educational purposes as the local lodge considers proper.

Art. VIII, Sec. 2, of the Texas Constitution, Vernon's Ann.St., authorizes the Legislature to exempt certain property from taxation and provides that all laws exempting any other property shall be null and void. Respondents recognize that authority to exempt their property must be found in the provision that empowers the Legislature to exempt "institutions of purely public charity." They insist that Sections 7 and 22 of Art. 7150 are reasonable definitions of the constitutional language and that the property in question is exempt under both sections. We agree that the property is exempt if Section 22 is valid, and respondents' right to the exemption they claim thus turns on whether Section 22 is constitutional.

In City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, the following definition was suggested:

In our opinion, the Legislature might reasonably conclude that an institution was one of "purely public charity" where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

The characteristics of an institution of purely public charity have been considered in several other cases. While the benevolent ends sought to be accomplished may take some form other than almsgiving, it is essential that the organization assume, to a material extent, that which otherwise might become the obligation or duty of the community or the state. It is also essential that the institution be organized and operated exclusively for purposes of public

its members and adherents, and to practice the art of Ancient Free and Accepted

Masonry as has been done from time immemorial.

charity. The fact that it performs some charitable acts or engages in some charitable activity is not enough to qualify it for the tax exemption authorized by Art. VIII, Sec. 2, of the Constitution. San Antonio Conservation Soc., Inc. v. City of San Antonio, Tex.Sup., 455 S.W.2d 743; River Oaks Garden Club v. City of Houston, Tex.Sup., 370 S.W.2d 851, and authorities there cited.

■ The exemption of an institution of purely public charity as such is not authorized by the constitutional provision in question. It is only property owned by such an institution and used exclusively for purely public charity that may qualify for the exemption. Morris v. Lone Star Chapter No. 6, R.A.M., 68 Tex. 698, 5 S.W. 519. The institution must be one of purely public charity in the purposes for which it is formed and in the means used to accomplish such purposes, and the property claimed to be exempt must be owned and used exclusively by the institution in furthering its charitable activities. Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist., Tex.Sup., 426 S.W.2d 943.

■ In City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, the property was owned by an institution of purely public charity but was used by two Masonic lodges for their meetings. Since the parties had stipulated that the work of the Masonic order was only partly charitable, it was held that the property was not exempt. The parties here have not agreed that the activities of respondents are only partly charitable, but that conclusion is clearly supported by the stipulation of facts in this case.

Respondents are organized and operate under the authority of grand lodges that are formed for charitable and benevolent purposes *and* to cement bonds of good fellowship and brotherly love among their members and adherents *and* to practice the art of Masonry. In furtherance of the charitable and benevolent purposes mentioned in the charters of the grand lodges,

respondents send part of their funds to the grand lodges which use the same to support various charitable undertakings. Additional money may be used by respondents for other charitable purposes, but the extent of these contributions is not disclosed by the record. However, respondents are not engaged exclusively in charitable activities or in the support of charitable enterprises conducted by their grand lodges or other organizations. According to the stipulation of facts they "are engaged in the work of the Masonic order and in its nature fraternal, educational and charitable in character. The property involved in this suit is used for conducting lodge meetings, initiations and ceremonials incident to their work of practicing the art of Ancient, Free and Accepted Masonry and promoting good fellowship and brotherly love among their members and adherents." It is clear then that respondents operate in a manner that is calculated to and does further all of the purposes mentioned in the charters of the grand lodges.

Neither the community nor the state is under any duty to provide or support lodge meetings, initiations and ceremonies for private fraternal organizations. Much that is beneficial to the members of the organization and to others can doubtless be attributed indirectly to these activities, hereafter referred to as lodge work, but the activities in themselves do not lighten any public burden. The Court of Civil Appeals reasoned that the lodge work can be disregarded in this case because it is wholly incidental to respondents' primary purposes and functions. We do not agree. There is nothing in the record to support the conclusion that the lodge work is incidental, and respondents had the burden of establishing their right to the exemption. Morris v. Lone Star Chapter No. 6, R.A.M., 68 Tex. 698, 5 S.W. 519. They do not contend that lodge work is purely incidental to their charitable activities but apparently regard it as essential to their very existence. In their briefs here and in the Court of Civil Appeals, they say that without initiations of new members and cere-

monials and education with reference thereto, there could be no growth or continued existence of fraternal organizations.

In our opinion respondents are not institutions of purely public charity within the meaning of the Constitution, and they do not use the property in question exclusively for charitable purposes.[3] Since the Legislature had no power to exempt the property from taxation, it is unnecessary to consider Section 7 of Art. 7150 in the present case. We do hold that Section 22 of Art. 7150 is unconstitutional as applied to the property involved in this suit.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

McGEE and PHILLIPS, JJ., note their dissent.

3. The Constitutional Convention of 1875 had before it an amendment to Art. VIII, Sec. 2, of the Constitution that would have authorized the Legislature to exempt the "halls of Turners, Masons, Odd Fellows, and similar societies." This amendment was defeated. Journal of the Constitutional Convention, p. 527.