

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

July 8, 1974

The Honorable Alton R. Griffin
Criminal District Attorney
Lubbock County Courthouse
Lubbock, Texas 79401

Opinion No. H- 342

Re: Whether hospitals will lose
their tax exemptions if they make
available premises to Blood
Services of Texas

Dear Mr. Griffin:

Your question asks whether two hospitals will lose their ad valorem tax exemptions if they permit a separately operated blood bank to use a portion of their premises for the purposes of obtaining blood from family members of patients.

Article 8, Section 1 of the Texas Constitution requires that "Taxation shall be equal and uniform." However, Subsection 2(a) of Article 8 authorizes the Legislature to exempt various classes of property including property owned by institutions of "purely public charity."

In the Constitution of 1876, Section 2 of Article 8 excepted from ad valorem taxation "all buildings used exclusively and owned by persons or associations of persons for school purposes, and the necessary furniture of all schools,...and institutions of purely public charity." Since that time the Section has been amended on a number of occasions and a great deal of language appears between "buildings used exclusively and owned by" and "purely public charity" and a literal reading would not link the two phrases. Nevertheless they are linked and we believe that, in adopting the various amendments, it was not the intent of the people to effect a change insofar as the Section applies to institutions of purely public charity.

Acting under that authority, the Legislature has adopted Article

7150, V. T. C. S. , exempting certain described properties from taxation. In its Sec. 7 it exempts:

> All buildings and personal property belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions, including hospital parking facilities, not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. . . .

It goes on to define an institution of "purely public charity" as:

> . . . one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when funds, property and assets of such institutions are placed and bound by its law to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes of its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons . . . .

The Texas Supreme Court has defined "purely public charity" to depend on the existence of three elements:

> . . . . First, it made no gain or profit; second, it accomplished ends wholly benevolent; and third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

City of Houston v. Scottish Rite Benevolent Ass'n, 230 S.W. 978, 981 (Tex. 1921); cited with approval. River Oaks Garden Club v. City of Houston, 370 S.W. 2d 851 (Tex. 1963); and in City of Amarillo v. Amarillo Lodge No. 731, AF & AM, 488 S.W. 2d 69 (Tex. 1972).

We assume the hospitals and the blood bank qualify as institutions of purely public charity, but, of course, whether any institution qualifies as one of purely public charity will ultimately depend upon whether, in fact, it meets the three point test , above set out.   .

In Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist. , 426 S.W. 2d 943 (Tex. 1968), a case decided under this constitutional provision, the Supreme Court specifically indicated that an institution's use of property for incidental purposes will not defeat a tax exemption. Hilltop Village, Inc. v. Kerrville I.S.D. , supra, at 947. See also, Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926, 932 (Tex. Comm. App. 1924).

The operation of the incidental facilities in Hilltop Village resulted in a profit which was divided between the outside operations and the institution. Whether the use of hospital facilities by a blood bank is an incidental use of those facilities is a question of fact which we cannot resolve in this opinion. If the use is incidental the tax exemption will probably be preserved under the guidelines set down in Hilltop Village.

If a full development of the facts does not indicate that the use of the hospital facilities by the blood bank meets the incidental use test under the guidelines set down in Hilltop Village , then it arguably can be contended that the tax exemption will be secure if the blood bank operates as an institution of purely public charity. All of this involves the resolution of fact questions which are not before us. Assuming, without deciding, that the blood bank is a charity, it will be necessary to determine whether use of property by more than one institution of purely public charity will defeat a charitable tax exemption.

In City of Amarillo v, Amarillo Lodge No. 731, AF & AM, supra, the court said:

> The *exemption of an institution of purely public
> charity as such is not authorized by the constitutional
> provision in question.* It is only property owned by
> such an institution and <u>used exclusively for purely
> public charity</u> that may qualify for the exemption.
> Morris v. Lone Star Chapter No. 6, R.A.M., 68
> Tex. 698, 5 S.W. 519. The institution must be one
> of purely public charity·in the purposes for which it
> is formed and in the means used to accomplish such
> purposes, and the property claimed to be exempt
> must be <u>owned and used exclusively by the institution
> in furthering its charitable activities.</u> Hilltop Village,
> Inc. v. Kerrville Ind. Sch. Dist., Tex. Sup., 426 S.W.
> 2d 943.   (488 S.W. 2d at 72) [Emphasis added]

Although this statement of the court lends itself to a broad interpreta-
tion, we believe that its context and the case authority on which it is based
suggest a narrower meaning is appropriate. For example, Hilltop Village,
as noted above, indicated that incidental use of property for non-charitable
purposes would not destroy an otherwise valid charitable tax exemption.

We have found only one case in which the issue was raised as to
whether a charitable exemption is defeated merely because more than
one charitable institution used the property. The Court of Civil Appeals
held in City of Houston v. River Oaks Garden Club, 360 S.W. 2d 855
(Tex. Civ. App. --Houston 1962) that multiple use by various charities
was sufficient to disallow the exemption. The Supreme Court affirmed on
different grounds and specifically declined to reach the question of use by
multiple charities. River Oaks Garden Club v. City of Houston, 370 S.W.
2d 851, 853 (Tex. 1963). However, Justice Norvell, joined by Justices
Greenhill, Griffin and Smith, dissented and said:

> . . . the mere fact that a charitable use is
> sometimes made of the property by some
> organization other than the owner, should not
> affect the tax exemption classification of the
> property so long as no charge is made for
> such·use. (370 S.W. 2d at p. 862.)

We note also that the Court of Civil Appeals opinion and other courts' broad statement on exclusive use are based on decisions involving use by non-charitable institutions. See, e.g., City of Houston v. Scottish Rite Benevolent Association, 230 S.W. 978 (Tex. 1921) (used by "Masonic organizations, whose activities included other fields than charity"); Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 5 S.W. 519 (Tex. 1887) (two of the building's three floors rented for profit), State v. Settegast, 254 S.W. 2d 925 (Tex. Comm. App. 1923) (property consisted of rent houses, the revenues from which were used for charitable purposes); B.P.O.E. Lodge No. 151 v. City of Houston, 44 S.W. 2d 488 (Tex. Civ. App. -- Beaumont 1931, error ref'd) (property used by profit-oriented "restaurant keeper, barber, gymnasium operators, and electric bath giver").

The leading case in which an exemption was upheld is Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex. Comm. App. 1924) where the court said:

> The constitutional requirement is twofold: the property must be owned by the organization claiming the exemption; it must be exclusively used by the organization, as distinguished from a partial use by it, and a partial use by others, whether the others pay rent or not. (259 S.W. at 932).

The authority cited to support this statement, was City of Houston v. Scottish Rite Benevolent Association, supra, where the Court had said: "The actual, direct use must be exclusive on the part of such an institution as is favored by the constitutional provision." (230 S.W. at 981). But the Court was dealing with a use by two Masonic orders whose work was only partly charitable.

When the Supreme Court discussed the Santa Rosa case by adopting the Commission of Appeals opinion in City of Longview v. Markham-McRee Memorial Hospital, 152 S.W. 2d 1112 (Tex. 1941) it stressed the landlord-tenant relationship of the use that destroyed the exemption. In City of

Longview two doctors rented offices in a hospital building. The doctors paid rent and contributed a substantial amount of their services to the hospital's charity cases. Additionally they also performed an essential service to the hospital by serving as house physicians. Although the fact that other doctors used the hospital facilities to treat private patients did not endanger the tax exemption, the renting of offices in the hospital did. The court avoided the dual use issue and said:

> While it is true that the use of these offices results in a necessary contribution to the operation of the hospital, it seems to us quite obvious that the letting and occupancy of same is dominantly a commercial and private transaction. We therefore conclude that the property in question is not exempt from taxes under our Constitution. (152 S. W. 2d at 1114)

Given the failure of the Supreme Court to decide definitively any case on the ground property was·used by more than one charitable institution and that the original statements of the court concerning exclusive use have arisen in cases in which at least one user of the property was not a charitable institution; we feel justified in predicting that our Texas Supreme Court would, at least hold that if a normal landlord-tenant relationship is not present, and no rent is charged, that the use of a portion of a charitable hospital by a charitable blood bank will not cause the hospital to lose its tax exempt status.

## SUMMARY

A hospital operating as a purely public charity will not lose the tax exempt status of its property because it is used in part by a blood bank if such additional use is incidental and if the blood bank

is also a purely public charity and if a normal landlord-tenant relationship is not involved and no rent is charged.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman