CITY OF DALLAS and Dallas Independent School District, Appellants,

v.

WOMEN'S AUXILIARY TO DALLAS COUNTY MEDICAL SOCIETY (now known as Dallas County Medical Society Auxiliary), Appellee.

No. 20538.

Court of Civil Appeals of Texas, Dallas.

June 2, 1981.

Rehearing Denied June 30, 1981.

Linda Lawson Gaither, Asst. City Atty., Dallas, for appellants.

Bradford D. Corrigan, Jr., Taylor, Mizell, Price, Corrigan & Smith, Dallas, for appellee.

Before ROBERTSON, STOREY and STEPHENS, JJ.

STEPHENS, Justice.

The Women's Auxiliary to Dallas County Medical Society sued the City of Dallas and the Dallas Independent School District under the Declaratory Judgment Act, seeking a declaration that its property is exempt from ad valorem taxes under the provisions of 1977 Tex.Gen. Laws, ch. 760, § 1, at 1909; 1975 Tex.Gen. Laws, ch. 719, art. XIX, § 1, at 2316; and 1969 Tex.Gen. Laws, ch. 848, § 1, at 2545. The defendants counterclaimed for taxes due for 1975 through 1978. Trial to the court resulted in judgment for the auxiliary, denying the city and the Dallas Independent School District's claim. We conclude the auxiliary does not qualify as a tax-exempt organization and thus we reverse.

Section 2(a) of article 8 of the Texas Constitution provides that the legislature may enact general laws to exempt from taxation institutions of purely public charity. This provision was implemented by the legislative enactments of 1977 Tex.Gen. Laws, ch. 760, § 1, at 1909; 1975 Tex.Gen. Laws, ch. 719, art. XIX, § 1, at 2316; and 1969 Tex.Gen. Laws, ch. 848, § 1, at 2545 (while in force, article 7150(7), (22), (22a)). This suit was brought in 1978 while the pertinent subdivisions of article 7150 were in effect. On January 10, 1980, before the case was tried, article 7150 was repealed by the enactment of the Texas Property Tax Code. Although the code was to be effective generally on January 1, 1982, Chapter 11 of the Code, repealing article 7150, was effective January 1, 1980. Thus, our decision is governed by its provisions. Sections 11.18 and 11.24 of the Code, dealing with exemptions, are the sections pertinent to this decision.

To qualify as a charitable organization under section 11.18, the auxiliary must show that it was organized exclusively to perform and is engaged exclusively in performing one or more of ten specified activities. Section 11.18(c)(1)(D), specifies the only activity under which the auxiliary

could qualify: "preserving a historical landmark or site." The exclusive performance requirement is relaxed by section 11.18(d) which provides that performance of noncharitable functions by the auxiliary, if otherwise qualified, would not result in a loss of its tax-exempt status, provided those noncharitable functions are incidental to its charitable functions. Despite numerous findings of fact, the trial court made no finding of the essential requirement that the auxiliary was organized exclusively to perform the function of preserving the Aldredge House as a historical landmark, and that it is exclusively engaged in performance of this function. We look to the evidence to see if we may imply such a finding.

■ The purpose clause of the articles of incorporation provides that the auxiliary is organized to sponsor and support programs for the advancement of medicine and public health. It is devoid of any mention of a design to acquire and preserve a historical landmark. The auxiliary was organized in 1917, incorporated in 1956, and did not acquire the Aldredge House until 1974. In 1977, the constitution and bylaws of the auxiliary, as amended, stated its object to be cooperation "with the medical profession in extending its aims, to bring into closer fellowship the families of members of the Dallas County Medical Society, and to engage in any philanthropic, educational and social work upon which the body may decide." We conclude from the findings of the trial court, and our examination of the evidence that the auxiliary was not organized exclusively to perform and to engage in preserving a historical landmark or site, and thus does not qualify under section 11.18 of the Property Tax Code as a tax-exempt organization.

■ We next look to section 11.24 of the Code which provides that "[t]he governing body of a taxing unit by official action of the body . . . may exempt from taxation part or all of the assessed value of a structure and the land necessary for access to and use of the structure, if the structure is: (1) designated as a Recorded Texas Histori-

cal Landmark by the Texas Historical Commission and by the governing body of the taxing unit; or (2) if designated as a historically significant site in need of tax relief to encourage its preservation pursuant to an ordinance or other law adopted by the governing body of the unit." Tex.Prop.Tax Code § 11.24 (Vernon Supp.1979). Despite an abundance of evidence as to its qualifications as a historical landmark, there is neither evidence nor a finding that the Aldredge House is designated and recorded as a Texas Historical Landmark by the Texas Historical Commission, or by the city. Neither is there evidence nor a finding that the city has designated it as a historically significant site in need of tax relief to encourage its preservation pursuant to an ordinance or other law. Finally, there is neither evidence nor a finding that either the city or the Dallas Independent School District has, by official action of its governing body, exempted the auxiliary from taxation. Thus, we conclude that the auxiliary does not qualify for tax-exempt status under article 11.24.

■ Next, we look to the pertinent sections of article 7150 to determine the right of defendants to recover taxes claimed for 1975 through 1978. Case law interpretation has established rules governing the grant of tax-exempt status. First, the constitutional provision must be given strict construction to harmonize with the intent of the voters adopting it. Secondly, the institution's property is exempt from taxation as opposed to the institution, and its property must be used *exclusively* for purely public charitable purposes. *River Oaks Garden Club v. City of Houston,* 370 S.W.2d 851 (Tex.1963); *Cox v. Robison,* 105 Tex. 426, 150 S.W. 1149 (1912); *Morris v. Lone Star Chapter No. 6, Royal Arch Masons,* 68 Tex. 698, 5 S.W. 519 (1887). The fact that the institution performs some charitable acts or engages in some charitable activities is not enough for it to qualify. It must have been formed for that exclusive purpose and its property must be used exclusively to further its charitable activities. *Amarillo v. Amarillo Lodge No. 731, A.F.*

&A.M., 488 S.W.2d 69 (Tex.1972); *San Antonio Conservation Society, Inc. v. City of San Antonio*, 455 S.W.2d 743 (Tex.1970); *River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851 (Tex.1963). Finally, by its activities, the institution must assume to a material extent those activities that otherwise might become an obligation or duty of the community or the state. *River Oaks Garden Club v. City of Houston, supra.*

With these rules in mind, we examine the record before us. No purpose would be served by detailing the documentary and testimonial evidence. Suffice it to say that the auxiliary, as shown by its constitution and bylaws (with their amendments) was not founded exclusively for purely charitable purposes. Although it engages in worthwhile activities, some of which are charitable, it does not use the Aldredge House exclusively to further its charitable activities. Neither can we agree with the trial judge's findings that in maintaining and preserving the Aldredge House, the auxiliary is assuming to a material extent that which might otherwise become an obligation or duty of the community or state. We find instead from the evidence that the auxiliary is essentially a social organization with membership limited to spouses of the Dallas County Medical Society. The auxiliary uses the Aldredge House as its headquarters as well as for various social activities and programs, many of which are philanthropical. Regardless of these findings, we remain unpersuaded that these activities, if not performed by the auxiliary, might otherwise become an obligation or duty of the community or the state. Consequently, we conclude that the auxiliary cannot qualify as a tax-exempt institution under the law as it existed in 1975 through 1980. Appellants proved a prima facie case as to taxes due for the years 1975 through 1978 by the admission into evidence of certified copies of the tax rolls as to land owned by the auxiliary.

Reversed and rendered as to the tax-exempt status of the auxiliary, and reversed and remanded for entry of judgment by the trial court for delinquent taxes, as proved by appellant.