**FIRST BAPTIST/AMARILLO FOUNDATION,**
Appellant,

v.

**POTTER COUNTY APPRAISAL DISTRICT and Potter County Appraisal Review Board, Appellees.**

No. 07–90–0087–CV.

Court of Appeals of Texas, Amarillo.

June 28, 1991.

Gibson, Ochsner & Adkins, Wayne P. Sturdivant, Marvin W. Jones, D. Gordon Bryant, Jr., Amarillo, for appellant.

Underwood, Wilson, Berry, Stein & Johnson, P.C., James A. Besselman, Kelly Utsinger, Perdue, Brandon & Fielder, Larry Brandon, George Dowlen, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Justice.

First Baptist/Amarillo Foundation (First Baptist) appeals from a judgment denying its Park Place Towers property an exemption from the payment of ad valorem taxes levied for the tax years 1986 through 1989 by Potter County Appraisal District and sustained by Potter County Appraisal Review Board (Potter County). By nine points of error, First Baptist contends (1–4) that the trial court erred in its judgment, findings of fact, and conclusions of law, in denying the exemptions, because it established as a matter of law its entitlement to the exemptions; (5–6) that the findings of fact and conclusions of law as to its lack of entitlement to exemptions are against the great weight and preponderance of the evidence; (7) that the denial of the exemptions was a violation of its constitutional right to equal protection under the law; (8) that the trial court's sustention of special exceptions to its pleading raising the constitutional right was error; and (9) that the trial court erred in excluding evidence upon which Potter County relied in granting exemptions to a similar facility. We will affirm.

First Baptist is a non-profit organization which owns and operates Park Place Towers, an independent living and nursing center for the elderly. Park Place Towers consists of ten floors, the second of which, the Ware Memorial Care Center, is devoted to nursing care. The remaining floors contain specially designed apartments. The entire facility is planned to provide support services of various kinds to increase and sustain the health of the residents by addressing their medical, health, emotional, spiritual, and social needs.

Residents of Park Place Towers generally pay an entrance fee and a monthly service fee to cover debt service and costs of operation, respectively. At the time of the hearing, the entrance fee was based upon the square footage occupied by the resident, and ranged from $46,800 for a 600–square–foot one-bedroom apartment to $180,000 for a three-bedroom apartment. The monthly service fee ranged from $520 to $1,700 per month, depending upon the size of the apartment, and was subject to increase as operating costs increased. The fee covered the many services and activities provided, two meals a day, and all utilities, except for cable television and telephone.

Following Potter County's refusal to exempt the property of Park Place Towers from ad valorem taxes, First Baptist paid the amounts assessed for the years 1986, 1987, and 1988 under protest, exhausted all administrative remedies, and appealed to the trial court for *de novo* review. The separate causes for 1986, 1987, and 1988 were consolidated into a single action which was later amended to include a complaint for 1989. Trial was had before the court without a jury, and judgment was rendered denying the requested exemption.[1]

---

1. First Baptist requested additional and amended findings of fact and conclusions of law to include, inter alia, the conclusions that the standard of district court review was by trial *de novo*, and that the review of decisions by the chief appraiser and appraisal review board were

First Baptist's claim to exemption is asserted under section 11.18 of the Texas Tax Code Annotated (Vernon Supp.1991), which is authorized by Article VIII, section 2(a) of the Texas Constitution.[2] Before considering whether Park Place Towers meets the statutory provisions of section 11.18, we must determine if it meets the constitutional requirement that it qualify as an institution of purely public charity. *North Alamo Water v. Willacy County*, 804 S.W.2d 894, 896–97 (Tex.1991).

■ An organization seeking to be classified as a purely public charity must make no gain or profit and must be organized to accomplish ends wholly benevolent by engaging in humanitarian services maintained to care for the physical or mental well-being of its recipients. Although the benevolent ends to be accomplished may take some form other than almsgiving, it is essential that the organization assume, to a material extent, services which otherwise might devolve to and become the obligations of the community or state. *Id.* at 899; *City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M.*, 488 S.W.2d 69, 71 (Tex.1972).

The parties stipulated that First Baptist was organized as a non-profit organization and operated in a manner so as not to accrue distributable profits or the realization of private gain. In this connection, Park Place Towers was constructed as a residential and nursing center to provide housing and health care for the elderly.

In support of First Baptist's claimed exemptions, Gordon Korb, Executive Director and Administrator of Park Place Towers and Ware Memorial Care Center, testified that during the years in issue, Park Place Towers waived the entry fees for a total of five persons: fees of $120,300 for three persons in 1986; $46,900 for one person in 1987, and $46,900 for one person in 1989. One of the three persons whose entry fee was waived in 1986 has since become unable to pay the monthly fees, but has continued to reside there in accordance with First Baptist's policy that in such an event the individual would continue to be cared for with monthly fees paid out of First Baptist's charitable fund. Korb also stated that, absent their waiver of entry fee and admission, these individuals would have required services at some other facility or at their homes, which he presumed would have had to be underwritten to some extent by state, federal, or community funds.

Korb further testified that Ware Memorial Care Center donated nursing care for a total of seven persons unable to pay any part of the expense, some of whom received care for consecutive years. He opined that these patients would have qualified for Medicaid assistance had they not been treated at Park Place Towers, a non-Medicaid facility. The amount of Medicaid assistance it was posited these people would have received had they been treated in a Medicaid-approved facility was denominated "funds saved to Medicaid." Korb testified such funds saved to Medicaid were as follows: $10,705 in 1986 for care for three people; $32,000 in 1987 for care for five people; $53,000 in 1988 for care for five people; and a savings in excess of $53,000 to Medicaid in 1989 for care for seven people.

In addition, Korb asserted that $13,516 worth of volunteer services were donated to Park Place Towers in 1989, computed at a value of $4.00 per hour. Lastly, Park

---

not entitled to a presumption of fairness or of not being arbitrary. Responding, the trial court embraced the conclusions, adding that they were honored. Nevertheless, in a marginal note in its brief, First Baptist asserts that because the court's response was untimely, *see* Texas Rules of Civil Procedure 298, the conclusions are a nullity and result in an implied conclusion against the *de novo* standard of review. The assertion is not persuasive, for rule 298 provides that "[n]o findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions."

2. The constitutional provision reads, in pertinent part, as follows:

[T]he legislature may, by general laws, exempt from taxation ... institutions of purely public charity; and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void.

Tex. Const. art. VIII, § 2(a).

Place Towers consistently operated at a loss, thus subsidizing the residents and patients in the amount of $326,000 in 1986, $316,000 in 1987, $373,000 in 1988, and $481,000 in 1989, all excluding any expense for mortgage or debt service. Copious financial records were introduced to substantiate this testimony.

Nevertheless, upon cross-examination, Korb agreed that there would have been no government funds available to cover housing for those independent-living residents receiving waivers of entrance fees, and that he had no figures to justify his presumption these individuals could have qualified for any government subsidies. Moreover, counsel for Potter County advanced that at the time of entry, the first waiver resident had $47,500 in liquid assets, *i.e.*, stocks, bonds, savings, etc., and monthly income of $1,045; the second had $42,000 in liquid assets and a $428 monthly income; the third had no liquid assets and a monthly income of $485; and the fourth had $4,552 in assets and $666 in monthly income. These figures were purportedly drawn from First Baptist's records and were unchallenged, but not otherwise validated. Korb conceded that if, as posited by counsel, Medicaid disqualified all applicants with assets of more than a monthly income of $368, these residents who had received waivers of their entry fees would not qualify for Medicaid funds.

Korb was then examined concerning the basis for his previously-stated opinion that those nursing care patients given free care would qualify for Medicaid. He admitted he had relied completely on oral representations received during a conference with such patient, a sponsor, trust agent, or other third party. No financial statements or other records were required to substantiate the representations made during those conferences. Lastly, Korb agreed that the facility does not advertise and has not advertised in the past that it provides services without regard to ability to pay.

Potter County also offered the deposition testimony of J.N. Nugent, Chief Appraiser for Potter–Randall County for 1986, 1987, and 1988. Nugent testified that there is no rule of thumb or percentage guideline to use in determining whether an organization qualifies for a tax exemption; each application is considered on its own merits. He then stated the operations of the entire facility were examined as a whole and that First Baptist did not qualify in terms of its residential operations or the medical care provided through the Ware Memorial Care Center. The primary reason for denial of exemption in each year was that, based on the information furnished, the indigency activity in terms of providing charitable housing and medical care was so minute in relation to the total operation.

For the year 1987, Nugent had also considered that the "waived" entrance fee for some residents was paid by private donors, giving the appearance that the charity was performed by the donor, not First Baptist. However, a bigger factor was the fact that only one person was excused from a total maintenance fee at the time of examination in 1987, and that for only one month. He stated, "The amount of housing provided to those unable to pay the full cost was so minute that it [the facility] wouldn't be purely public charity." Nugent also felt First Baptist's charter granted powers too broad to define the facility as a purely public charity, qualifying this by saying that factor had weighed more heavily in 1986 than in succeeding years.

First Baptist had the burden of clearly proving that it qualified for the statutory tax exemptions. *North Alamo Water v. Willacy County*, 804 S.W.2d at 899. Whether it qualified is a question of fact. *Lamb Cty. Appraisal v. South Plains Hosp.*, 688 S.W.2d 896, 903 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.); *B.P.O.E. Lodge No. 151 v. City of Houston*, 44 S.W.2d 488, 493 (Tex.Civ.App.—Beaumont 1931, writ ref'd).

Nevertheless, the gist of First Baptist's first four points of error is that it proved, as a matter of law, it met all requirements to qualify for the exemptions and that the contrary factual findings by the court were against the undisputed evidence adduced at trial. Thus, for First Baptist to prevail on these points, there must be no evidence in

the record to support the court's factual findings and, if there is no evidence that supports the court's adverse findings, then the record must show First Baptist's tax exempt status as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

■ Although First Baptist produced Korb's testimonial evidence which, standing alone, proved some charitable activity, the trial court heard other evidence. Korb's opinion that the nursing care patients receiving free care would qualify for Medicaid if they applied was, admittedly, based upon oral representations made to him by the patients, their sponsor, trust agent, or other third party, without any effort to document the representations. His opinion that the residents whose entrance fees were waived could qualify for government assistance was tempered by two concessions: the residents would not receive assistance for independent living, and he had no figures to justify his presumption that the residents could have received any government assistance of any sort.

Additionally, the court was made aware that the facility never advertised its services were provided without regard to ability to pay. There was no showing that First Baptist's operating losses were the result of charitable work instead of an admitted inability to operate at full capacity.

Furthermore, the court had for consideration the testimony of Chief Appraiser Nugent, who explained the bases for his determination to deny the exemptions. The primary reason was that the indigency activity of First Baptist in terms of providing charitable housing and medical care was so minute in relation to the total operation that First Baptist would not be purely public charity.

Obviously, from this summary of the evidential record, the trial court was faced with conflicting and contradictory evidence, which raised, among other issues, the factual question whether First Baptist assumed, to a material extent, services which otherwise might devolve to and became the obligations of the community or state. The court, allowed considerable discretion in evaluating the evidence, could believe one witness and disbelieve another, resolve inconsistencies in the testimony of one witness, as well as in the testimony of different witnesses, and arrive at the facts deemed most reasonable under the evidence. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986).

In exercising its discretion, the trial court found, as recorded primarily in its findings of fact 3, 12, 16 and 17, that First Baptist failed to prove by a preponderance of the evidence that it assumed, to a material extent, that which otherwise might become the obligation or duty of the community or the state. There is, of course, evidence in the record which supports the court's findings and, consequently, we do not address the evidence advanced by First Baptist as establishing its exemptions as a matter of law. *Holley v. Watts*, 629 S.W.2d at 697. The first four points of error are overruled.

■ By points of error five and six, First Baptist contends that the court's factual findings as to its lack of entitlement to an exemption from ad valorem taxes are so against the great weight and preponderance of the evidence as to be manifestly unjust. The court's failure to find these facts simply means that, as the court expressed, First Baptist failed to persuade the court by a preponderance of the evidence to find the facts in its favor. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966). Our review of this contention requires that all of the evidence be considered to determine whether the court's material findings of fact are so against the great weight and preponderance of the evidence as to be clearly wrong. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973).

■ A consideration of all the evidence reveals some evidence supporting the inconsistent positions of the parties. Mindful of the trial court's role as the fact-finder, we are not authorized to set aside the court's findings merely because the court could have drawn from the evidence different factual findings and legal conclusions.

*Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797 (1951). Therefore, we cannot say that the court's factual findings adverse to First Baptist's claims of exemptions are so against the great weight and preponderance of the evidence as to be clearly wrong. The fifth and sixth points of error are overruled.

First Baptist pleaded that Potter County violated its right to equal and uniform taxation provided by Article VIII, § 1 of the Texas Constitution, by denying its applications for exemptions while allowing other similar, if not identical, institutions to enjoy tax exempt status. Potter County specially excepted to the constitution theory of relief. The court sustained the exception and excluded evidence First Baptist offered on its theory. First Baptist utilizes its seventh, eighth, and ninth points of error to submit that the trial court violated its constitutional right to equal protection under the law by its sustaining the exception and excluding its evidence.

First Baptist's right to the claimed exemptions depended upon proving that its total operation met the requirements for the constitutional exemption, *North Alamo Water v. Willacy County,* 804 S.W.2d at 899; *City of McAllen v. Ev. Luth. Good Sam. Soc.,* 530 S.W.2d 806, 810 (Tex.1975), not that some other institutions enjoyed a tax exemption, *i.e.,* were not assessed taxes. *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378, 383 (1955); *Sam Bassett Lumber Co. v. City of Houston,* 145 Tex. 492, 198 S.W.2d 879, 880 (1947). Thus, First Baptist was not entitled to an exemption merely because Potter County did not assess property of other institutions, even if the property was taxable. *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414, 416 (1954). Then, given First Baptist's failure to qualify for the exemptions claimed, neither the denial of the exemptions, nor the sustaining of the special exception, nor the exclusion of evidence pertaining to other tax exempt institutions, violated its right to equal and uniform taxation. The last three points of error are overruled.

The judgment of the trial court is affirmed.