baptist memorials v. tom green appraisal 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-299-CV





BAPTIST MEMORIALS GERIATRIC CENTER,



 APPELLANT


vs.





TOM GREEN COUNTY APPRAISAL DISTRICT


AND TOM GREEN COUNTY APPRAISAL REVIEW BOARD,



 APPELLEES




 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL

DISTRICT


NO. CV90-1117-B, HONORABLE ROYAL HART, JUDGE PRESIDING



 





 This case presents the difficult question of whether property owned and used by
a charitable organization is automatically entitled to a tax exemption without regard for the
property's use or purpose. We hold that it is not. Therefore, we will affirm the judgment of the
district court.



BACKGROUND


 Baptist Memorials Geriatric Center ("Baptist Memorials") is a non-profit
corporation organized under the supervision and control of the Baptist General Convention of
Texas. Baptist Memorials operates an impressive facility in San Angelo that includes a hospital, nursing home, and residential complex (1) for the elderly. The Tom Green County Appraisal
District ("the District") and the Review Board granted Baptist Memorials a charitable exemption
for the hospital and nursing home while denying this exemption for its residential complex. 
Baptist Memorials challenged this ruling by bringing an action in the district court. The court
submitted a charge to the jury, and it answered as follows:



You are instructed that use of exempt property by persons who are not charitable
organizations does not result in the loss of an exemption if the use is incidental to
use by qualified charitable organizations and limited to activities that benefit the
beneficiaries of the charitable organizations that own or use the property.


You are instructed that performance of noncharitable functions by a charitable
organization that owns or uses exempt property does not result in loss of an
exemption if those other functions are incidental to the organization's charitable
functions.


You are instructed that "charitable" implies giving without consideration or
expectation of return and means more than mere alms-giving or the relief of
poverty and distress.


You are instructed that "subject property" means the Highrise and the houses and
duplexes and related personal property located in the Village at Baptist Memorials
Geriatric Center.


QUESTION 1: Do you find from a preponderance of the evidence that during
1990, Baptist Memorials Geriatric Center owned the subject property?


ANSWER: YES


QUESTION 2: Do you find from a preponderance of the evidence that during
1990, all the subject property was used exclusively by Baptist Memorials Geriatric
Center?


ANSWER: YES


QUESTION 3: Do you find from a preponderance of the evidence that during
1990, the subject property was used exclusively in one or more of the following
charitable functions:


(a) providing medical care without regard to the beneficiaries' ability to pay;


(b) providing support to elderly persons or the handicapped without regard to the
beneficiaries' ability to pay;


(c) providing permanent housing and related social, health care, and educational
facilities for persons who are 62 years of age or over without regard to the
residents' ability to pay?


ANSWER: NO



QUESTION 4: Do you find from a preponderance of the evidence that during
1990, Baptist Memorials Geriatric Center operated in such a way that there was no
realization of any form of private gain?


ANSWER: YES



QUESTION 5: Do you find from a preponderance of the evidence that during
1990, Baptist Memorials Geriatric Center made no gain or profit?


ANSWER: YES


QUESTION 6: Do you find from a preponderance of the evidence that Baptist
Memorials Geriatric Center operates the subject property in a way that
accomplishes ends which are wholly benevolent by engaging in humanitarian
services maintained to care for the physical or mental well being of its recipients?


ANSWER: YES


QUESTION 7: Do you find from a preponderance of the evidence that Baptist
Memorials Geriatric Center operates the subject property in a way that affects all
the people of the community or the state by assuming, to a material extent, services
which otherwise might devolve to and become the obligations of the community
or state?


ANSWER: NO



 The trial court rendered judgment in favor of the District on the basis that Baptist
Memorials met neither constitutional nor statutory requirements for a charitable exemption for the
residential complex. Baptist Memorials asserts four points of error on appeal, while the District
raises two cross-points.



DISCUSSION 


 The Texas Constitution provides:



[T]he legislature may, by general laws, exempt from taxation . . . all buildings
used exclusively and owned by . . . institutions of purely public charity; and all
laws exempting property from taxation other than the property mentioned in this
Section shall be null and void.



Tex. Const. art. VIII, § 2(a) (emphasis added).

 The Tax Code contains the requirements established by the Legislature in order for
property to qualify for a charitable exemption from taxation:



(a) An organization that qualifies as a charitable organization as provided by this
section is entitled to an exemption from taxation of the buildings and tangible
personal property that:


 (1) are owned by the charitable organization; and


 (2) except as permitted by Subsection (b) of this section, are used
exclusively by qualified charitable organizations.


(b) Use of exempt property by persons who are not charitable organizations
qualified as provided by this section does not result in the loss of an
exemption authorized by this section if the use is incidental to use by
qualified charitable organizations and limited to activities that benefit the
beneficiaries of the charitable organizations that own or use the property.


(c) To qualify as a charitable organization for the purposes of this section, an
organization . . . must meet the applicable requirements of Subsections (d),
(e), (f), and (g) of this section.


(d) A charitable organization must be organized exclusively to perform religious,
charitable, scientific, literary, or educational purposes and, except as
permitted by Subsection (h) of this section, engage exclusively in performing
one or more of the following charitable functions:


 (1) providing medical care without regard to the beneficiaries' ability to
pay; 

 . . .


 (3) providing support to elderly persons or the handicapped without
regard to the beneficiaries' ability to pay; 

 . . .


 (13) providing permanent housing and related social, health care, and
educational facilities for persons who are 62 years of age or older
without regard to the residents' ability to pay;

 . . .


(e) A charitable organization must be operated in a way that does not result in
. . . realization of private gain 

 . . . .


(h) Performance of noncharitable functions by a charitable organization that
owns or uses exempt property does not result in loss of an exemption
authorized by this section if those other functions are incidental to the
organization's charitable functions.



Tex. Tax Code Ann. § 11.18 (West 1992). (2)

 Exemptions from taxation are not favored by the law and will not be favorably
construed. North Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894,
899 (Tex. 1991). Statutory exemptions are subject to strict construction because they undermine
equality and uniformity by placing a greater burden on some taxpayers rather than all. Id.

 The Texas Supreme Court has recognized that before an organization is eligible to
qualify for tax exempt status under section 11.18 of the Tax Code, the organization must first
satisfy the applicable constitutional requirements that entitle an organization to seek the
exemption. North Alamo, 804 S.W.2d at 899. The constitution requires that the organization be
an institution of purely public charity. In order for an organization to qualify under the
constitution as a "purely public charity," the organization must meet three requirements: (1) it
must make no gain or profit; (2) it must be organized to accomplish ends wholly benevolent by
engaging in humanitarian services maintained to care for the physical or mental well-being of its
recipients; and (3) the total operation of the charity must affect all the people of a community or
state by assuming, to a material extent, services that otherwise might devolve to and become the
obligations of the community or state. Id.; City of McAllen v. Evangelical Lutheran Good
Samaritan Soc'y, 530 S.W.2d 807, 808-09 (Tex. 1975) (citing City of Houston v. Scottish Rite
Benevolent Ass'n, 230 S.W. 978, 981 (Tex. 1921)). The entity must then meet the statutory
definition of a "charitable organization" found in section 11.18 of the Tax Code.

 Baptist Memorials contends it is indisputedly a qualified charitable organization. (3) 
In effect, it suggests that tax exemption of its property must be decided as one package. 
Individual scrutiny is relevant only as to its total operation as an organization. If it is not a
charitable organization, none of its property can be exempt from taxation. Because it is a charity
serving the public, it argues, all of its eligible property must be exempt. Neither party challenges
the tax exemption on the properties not in dispute and we render no opinion with respect to those.

 In any event, an organization that qualifies as both a "purely public charity" and
a "charitable organization" faces another hurdle mandated by the constitution and Tax Code. Only
buildings and certain properties used exclusively and owned by the charity may be exempt from
taxation. Baptist Memorials, relying solely upon section 11.18(a) of the Tax Code, argues on
appeal that the plain meaning of the statute requires us to hold that all buildings owned and used
exclusively by a charitable institution are automatically tax-exempt, including its residential
complex. The supreme court, however, has foreclosed such an interpretation.

 The court has repeatedly discussed the meaning of the constitutional provision
authorizing charitable tax exemptions. The court first addressed the awkward wording of the
relevant constitutional provision in a case decided just eleven years after the constitution was
enacted. This cause involved a building owned by a Masonic organization that was partly leased
to parties who did not perform charitable functions. The lower court found the Masonic body to
be an institution of purely public charity and inquired no further. The supreme court noted:



If it can be shown that property belonging to a charitable association, not directly
and exclusively used by it in furtherance of its charitable purposes, but partly
rented for profit, though its resources be exclusively devoted to the objects of the
charity, is not exempt from taxation in our state, it will be unnecessary to
determine whether or not the [Masonic body] can be deemed an "institution of
purely public charity."



Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 5 S.W. 519, 519 (Tex. 1887) (emphasis
added). The court held that the phrase "all buildings used exclusively and owned by" modified
"institutions of purely public charity" despite the separation of the two phrases in a long sentence. 
Because the property in issue was not used exclusively by the charity, the court held it could not
be tax-exempt. It stated, "We are of the opinion that [this] reading gives the more reasonable
construction of the language as used in the constitution of our state . . . . If it had been intended
to exempt all the property of charitable institutions, it would seem that more general terms would
have been used." Id. at 520. The court concluded, "The property in controversy having been
leased for purposes of profit, we think the court below erred in holding it exempt from taxation." 
Id. at 522.

 Almost a century later, the supreme court restated its reasoning:



Because of the wording of Sec. 2, Art. VIII [of the Constitution], as it was written
originally, we held in [Morris] that it did not authorize exemptions of institutions
of purely public charity as such but only that property which was owned by such
institutions and was used exclusively by them for purely public charity. We have
adhered to that construction through the years in spite of frequent changes in
internal language and punctuation in the section, and have denied exemption of
property, not used exclusively by the owner for purposes of purely public charity.



River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, 853 (Tex. 1963) (emphasis added).

 Although section 2 has been amended numerous times, the supreme court
nevertheless has consistently interpreted the controlling constitutional provision. An institution
must be one of "purely public charity," satisfying the definition outlined in North Alamo. In
addition, "[T]he properties which are the subject of the claimed exemption must be owned and
used exclusively by the institution in furthering its charitable activities . . . . [T]here must be a
dedication of the properties to charitable uses accompanied by actual uses for such purposes." 
Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist., 426 S.W.2d 943, 946-47 (Tex. 1968),
disapproved on other grounds, City of McAllen, 530 S.W.2d at 811 (charter and by-law
declarations alone are not conclusive of charitable nature of institution); see also City of Waco v.
Texas Retired Teacher Residence Corp., 464 S.W.2d 346, 347 (Tex. 1971); Willacy County
Appraisal Dist. v. North Alamo Water Supply Corp., 676 S.W.2d 632, 636 (Tex. App.--Corpus
Christi 1984, writ ref'd n.r.e.). As the supreme court has observed, "It has often been held that
a charitable institution is entitled to exemption of only that property which is used by the
institution exclusively for purely public charity." City of McAllen, 530 S.W.2d at 810. While
every incidental use of the property need not be gratuitous, the law requires that the character of
the institution and the nature of the disputed property's use be clearly charitable.

 Frequently, the legal dispute over tax exemption concerns whether an organization
qualifies as a charitable organization. Even assuming it does, the constitution nevertheless
requires that its property not only be used by the charity but it must be used in furtherance of the
institution's charitable purpose. This interpretation of the constitution has prevailed from 1887
until the present. See City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M., 488 S.W.2d 69,
72 (Tex. 1972); City of Dallas v. Women's Auxiliary, 620 S.W.2d 695, 697 (Tex. Civ.
App.--Dallas 1981, writ ref'd n.r.e.).

 Section 11.18(a) of the Tax Code contains language similar to that of the
constitution regarding the ownership and exclusive use of property by a charitable organization. 
This statutory provision must be read in harmony with the supreme court's interpretation of the
constitutional requirements. Constitutional requirements must be met before an organization can
qualify for tax-exempt status under section 11.18. North Alamo, 804 S.W.2d at 899. The
Legislature cannot exempt property from tax liability unless it comes within the constitution's
permissible framework.

 Baptist Memorials argues that because it is a charitable organization, the statute
provides that all buildings it owns and uses are automatically entitled to tax exempt status, relying
upon section 11.18(a) of the Tax Code. In its first point of error, it asserts that the jury's
favorable answers to the first two questions, finding that the property was owned and used
exclusively by Baptist Memorials, required the district court to render judgment in its favor in
accordance with the statute.

 The constitution, however, additionally requires that the property's use must be for
purposes that further the charitable goals of the organization. Mason, 5 S.W. at 520. The charity
not only must actually use the property but must actually use the property in furtherance of its
charitable purpose. Hilltop, 426 S.W.2d at 947. We conclude that the statutory requirement
concerning the property's use necessarily requires that the use be in furtherance of the
organization's charitable purpose in order to qualify for tax exemption.

 We must reject the argument that the district court was required to render
judgment based upon the jury's answers to the first two questions. Findings of ownership and use
by a charitable organization are not sufficient; the charity also must use the property for its
charitable purposes. Baptist Memorials did not suggest a jury question on the property's
charitable use. The court did submit questions 3 and 7 to the jury. Assuming these inquiries
relate to the charitable use requirement, the jury's negative answers reflect that Baptist Memorials
failed to carry its burden of proof on the issue. We overrule its first point of error.

 Baptist Memorials' second point of error complains that the district court
improperly instructed the jury that in answering questions 3 and 7, it should consider only the
residential complex, the highrise and Village, contending instead that the total operation of Baptist
Memorials is the relevant focus. (4) We disagree. The total operation may determine whether the
organization meets the requirements of a "purely public charity," North Alamo, 804 S.W.2d at
898-99, but the property itself, not the organization, is what qualifies for tax exemption. City of
Amarillo, 488 S.W.2d at 72; River Oaks, 370 S.W.2d at 853. The functions performed by the
charity on its other property, whether this property is adjacent or across the state, are not
controlling on the issue of whether a particular property is exempt from taxation. (5) We overrule
the second point of error.

 Baptist Memorials' last two points of error complain that the evidence at trial
conclusively required an affirmative answer to question 3 and question 7 or, alternatively, that the
jury's negative answers to these questions were against the great weight and preponderance of the
evidence. A party in this position has a very difficult burden on appeal attempting to reverse the
jury's verdict when the evidence is conflicting and the facts are in dispute.

 Whether an organization is a purely public charity is a question of fact. First
Baptist/Amarillo Found. v. Potter County Appraisal Dist., 813 S.W.2d 192, 195 (Tex.
App.--Amarillo 1991, no writ); Lamb County Appraisal Dist. v. South Plains Hosp.-Clinic, Inc.,
688 S.W.2d 896, 903 (Tex. App.--Amarillo 1985, writ ref'd n.r.e.). Similarly, whether the
property in dispute is used in furtherance of the organization's charitable purposes is a fact issue. 
Here, the jury decided this fact issue against Baptist Memorials. Baptist Memorials had the
burden to prove the residential complex qualified as tax-exempt. North Alamo, 804 S.W.2d at
899. Baptist Memorials thus had the burden to request jury questions on facts it was attempting
to prove, including whether its use of the residential complex was in furtherance of its charitable goals. It did not submit question 3 or question 7; it objected that question 7 should
not be submitted at all; and it objected to the focus of both questions, as discussed above. Even
assuming that affirmative answers to these questions would support a judgment for Baptist
Memorials, and further assuming that Baptist Memorials is now entitled to assert these complaints
on appeal, we nevertheless cannot sustain its points of error.

 Baptist Memorials attempts to overcome adverse answers to jury questions on
which it had the burden of proof, claiming it proved the facts as a matter of law. In considering
a legal sufficiency complaint, we must first consider only the evidence and inferences tending to
support the verdict and disregard all evidence and inferences to the contrary. If there is no
evidence to support the answer, then we examine the entire record to see if the contrary
proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). Baptist Memorials alternatively
asserts a factual sufficiency challenge. For such a point, we must consider and weigh all the
evidence and should set aside the jury's answer only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951).

 Questions 3 and 7 were directed to the use of the subject property, the residential
complex. The jury failed to find that Baptist Memorials used the residential complex to provide
charitable services to the elderly and beneficiaries regardless of each person's ability to pay. The
jury also declined to find that the property operated for the benefit of all by providing services that
the community might otherwise be required to assume.

 Without attempting to recount all the evidence presented, the record reveals that
the residential village was built long after the hospital and nursing facilities. Some of the houses
in the Village were sold for $65,000 with no proof of any accommodation made for purchase by
prospective residents of modest means. The institution's president testified that residents were
placed "strictly on the economics of it. . . . It would be based primarily on how much we had in
the unit and what we could do." Upon a resident's death, ownership of the unit reverted to
Baptist Memorials, and the resident's survivors retained no interest and received no compensation
for the property. The only favorable evidence to which Baptist Memorials refers us reveals that
some residents of modest means lived in the complex and that the complex operated at a loss in
1990. The record reflects that since the residential complex was constructed it had never
advertised its services as being available to the community regardless of financial status; the
record lacks evidence that services were provided regardless of a person's ability to pay. The
proof showed that in 1990 all comparable units rented for the same rate without regard to ability
to pay, all tenants paid that amount, and only one tenant's rent had not been collected. We
conclude there was some evidence to support the jury's failure to return a favorable answer to
questions 3 and 7; furthermore, we hold the jury's answers were not against the great weight and
preponderance of the evidence. We overrule Baptist Memorials' third and fourth points of error. (6)


 Having overruled all of appellant's points, we need not address the District's cross-points. Therefore, we affirm the judgment of the district court.




 

 Marilyn Aboussie, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: April 7, 1993

[Publish]
1.   The residential complex consists of a highrise building containing both apartments and
motel units and a "village" of houses and duplexes.
2.   All further references to the Tax Code are from Tex. Tax Code Ann. (West 1992).
3.   Baptist Memorials notes that counsel for the District admitted at trial that it was a
charitable organization and that the District granted exemptions for the hospital and nursing
home based on Baptist Memorials' charitable status.
4.   Again, we assume that questions 3 and 7 are relevant to the issue of whether the
residential complex was used in furtherance of Baptist Memorials' charitable purposes as an
organization.
5.   We note that an organization does not lose the tax exemption on qualified property
merely because it may also perform noncharitable functions, so long as these functions are
incidental to the main charitable purpose of the organization. Tax Code § 11.18(h).
6. We believe our opinion is consistent with the Supreme Court's decision in City of McAllen. 
The court there overruled Hilltop's holding that an organization must pledge its property and
assets in perpetuity to the relief of persons in financial need and to the assistance in obtaining care. 
City of McAllen, 530 S.W.2d at 810-11. Justice Steakley, the author of Hilltop, expressed
concern in his dissent in City of McAllen that the majority had weakened other precedents as well
as Hilltop. City of McAllen, 530 S.W.2d at 812 (Steakley, dissenting).


 City of McAllen reaffirmed Hilltop's requirement that a charity must use its property in
furtherance of its charitable purposes. City of McAllen, 530 S.W.2d at 809. In citing City of
McAllen, another court of appeals noted it must apply "this `actual use in fact' test" when
deciding "whether [the organization] qualifies as a tax-exempt public charity." State v. Alliance
Village, Inc., 592 S.W.2d 687, 689 (Tex. Civ. App.--Corpus Christi 1979, no writ).


 Baptist Memorials cites City of McAllen in support of its contention that the total charitable
organization must be considered instead of focusing exclusively upon the disputed property. The
supreme court stated: "The ultimate consideration then, should be based upon an evaluation of the
total operation of the institution engaged in humanitarian activities whose services are rendered
at cost or less and which are maintained to care for the physical and mental well-being of the
recipient." Id. at 810. The court's opinion emphasizes the particular institution located on the
property, not the organization as a whole, is the proper focus.


 Finally, City of McAllen disapproved of any requirement that every act of a purely public
charity must dispense absolute gratuities. Id. at 809. An institution may have more paying
patients than non-paying patients. Id. at 810. It may perform religious purposes so long as the
charitable requirements are met. Id. at 810-11. However, City of McAllen held a charitable
organization would not be disqualified as a matter of law from claiming a tax exemption if such
conditions existed. The court affirmed the trial court's injunction in favor of the charitable
organization. Since City of McAllen, Texas courts have generally affirmed the finder of fact's
decision on the question of whether an organization which does not dispense absolute gratuities
meets the requirements for tax-exempt status. Compare Dallas County Appraisal Dist. v. The
Leaves, Inc., 742 S.W.2d 424 (Tex. App.--Dallas 1987, writ denied) (findings in favor of
charitable organization) and Needville Indep. Sch. Dist. v. S. P. J. S. T. Rest Home, 566 S.W.2d
40 (Tex. Civ. App.--Beaumont 1978, no writ) with First Baptist and Air Force Village Found.,
Inc., v. Northside Indep. Sch. Dist., 561 S.W.2d 905 (Tex. Civ. App.--El Paso 1978, writ ref'd
n.r.e.) (findings in favor of taxing entity). Here, the jury indicated by its verdict that Baptist
Memorials failed to meet its burden of proof that the residential complex qualified for tax-exempt
status.