**The CITY OF WACO et al., Petitioners,**

**v.**

**TEXAS RETIRED TEACHER RESI-
DENCE CORPORATION,
Respondent.**

**No. B–2179.**

Supreme Court of Texas.

Feb. 17, 1971.

Rehearing Denied March 24, 1971.

Earl Bracken, Jr., City Atty., Earl Bracken, Jr., and Albert R. Kuehl, Waco, for petitioners.

Beard & Kultgen, David Kultgen and Thomas L. Cook, Waco, for respondent.

PER CURIAM.

The opinion delivered in this case on December 16, 1970 is withdrawn and the following is substituted therefor.

Plaintiffs-petitioners, City of Waco and Waco Independent School District, sued defendant-respondent, Texas Retired Teacher Residence Corporation, for taxes, penalties and interest on defendant's real estate used as a residence for the aged, and its furniture, fixtures and inventory for the years 1966, 1967 and 1968. The Residence Corporation defended on the ground that it was a purely public charity and that its property was exempt from ad valorem taxes. In response to a special issue, a jury found that the residence had been operated during the three-year period as an institution of purely public charity; however, the trial court rendered judgment, non obstante veredicto, for the plaintiffs for the full amount of their taxes. The court of civil appeals reversed the trial court's judgment upon a holding that the jury's finding settled the issue, and rendered judgment that the plaintiffs take nothing. 453 S.W.2d 236. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Two grounds for rendering judgment non obstante veredicto were urged upon the trial court, to wit: (1) There was no evidence to support the jury's finding that the residence had been operated as an insti-

tution of purely public charity during the years in question, and (2) respondent's by-laws did not bind its trustees to use its assets for charitable purposes. The judgment was properly rendered if either ground was supported by the record. See Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist., 426 S.W.2d 943, 946–947 (Tex.Sup. 1968), where we reiterated this longstanding rule in these words: "Briefly stated, there must be a dedication of the properties to charitable uses accompanied by actual uses for such purposes." See also River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, 856 (Tex.Sup.1963). We have concluded that the judgment was properly rendered on the first ground inasmuch as the evidence establishes conclusively that respondent's residence was not operated as a purely public charity during the years in question. Its method of operating the residence and the evidence which controls our decision are undisputed.

Respondent is a non-profit corporation, chartered "[t]o provide elderly persons with housing facilities and services specially designed to meet the physical, social and psychological needs of the aged, and to promote their health, security, happiness and usefulness in longer living. * * *" In furthering its purpose, respondent opened the Stilwell Residence in Waco in 1964 and has operated it since that year. The residence has eighty-eight living units. Seventy-one units, with full baths and for single occupancy, were rented to persons paying fees of $160 per month or $1,920 per year for 1966 and 1967, and $180 per month or $2,160 per year in 1968. Two units, with half-baths and for single occupancy, rented in all years for fees of $140 per month or $1,680 per year. Eight units, for double occupancy but without kitchens, were rented for fees of $260 per month or $3,120 per year in 1966 and 1967 and for $280 per month or $3,360 per year in 1968. Seven units, for double occupancy and with kitchens, were rented for fees of $285 per month or $3,420 per year for 1966 and 1967 and for $300 per month or $3,600 per

year in 1968. Seven persons who had occupied the two single-occupancy, half-bath units paid only $115 per month, but the required additional charge of $25 per month was paid from funds provided by an independent foundation. For the fees outlined, Stilwell residents received furnished apartments, board, utilities, maid service, and individually controlled central heating and cooling, together with access to other facilities such as dining room, living room, game room, music room, lounges, and free outside parking for their automobiles. Respondent does not provide medical aid for Stilwell's residents, and it neither admits nor retains residents who are ill. When we apply statutory provisions as judicially interpreted to the foregoing facts, it is abundantly clear that Stilwell was not operated as a purely public charity during the years in question.

Although the charitable exemption from ad valorem taxes was included in Sec. 2, Art. VIII of the Constitution of 1876, the Legislature did not define an institution of purely public charity until 1905. See 12 Gammel's Laws of Texas 314. The definition has been carried forward through the years and appears today as Sec. 7, Art. 7150, Vernon's Tex.Civ.Stats. Such an institution is defined as "one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its law to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members * * *." If respondent is entitled to the exemption it claims, it must be under this statutory provision.

Considering the language of Sec. 7, Art. 7150, the precise question to be decided, then is whether the accommodations provided by respondent are provided "in sickness or distress * * * without regard to poverty or riches of the recipient." We are satisfied that a negative answer is

required by our decision in Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist., 426 S.W. 2d 943 (Tex.Sup.1968). Hilltop Village, Inc., established and operated a home for older adults at Kerrville under sponsorship of the Southwest Texas Conference of the Methodist Church. At the time of trial, the home had eighty-six residents of whom sixty-seven were able to pay the full cost of their care and nineteen of whom paid less than full residential cost. It was stipulated that twenty-two percent of the residents of the home received some charity in varying amounts. Thus, with a factual operation more nearly approaching genuine charity as proclaimed in Sec. 7, Art. 7150 than in the instant case, we noted, nevertheless, that it was "apparent that Hilltop Village is [was] not accepting residents without regard to their financial circumstances," and concluded that "[t]he requisite elements of dedication and *use in fact* of its properties" [1] were not present.

Respondent and the court of civil appeals stress our statement in *Hilltop* that the activity of "providing facilities to meet the special residential requirements of the aged *may* qualify an institution for tax exemption as one of purely public charity"; but they read that language out of context with the language which follows, to wit, "under circumstances where, in the words of Article 7150, aid is dispensed to those in sickness or distress 'without regard to poverty or riches of the recipient' * * *."

Respondent relies primarily on Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex.Comm.App.1924, jdgmt adopted) as supporting its right to exemption. In *Santa Rosa*, the court held that charges to and payment by some hospital patients did not defeat the right to exemption when it was clear that, notwithstanding, "all charity patients who applied for treatment and operations were received without regard to poverty or riches, creed, station, or color, and without the imposition of such conditions as to unreasonably,

or even in any substantial effect, amount to a denial of the facilities of the hospital to objects of charity * * *." 259 S.W. 932. That is not the situation in this case. Here, no person was accepted during the years in question without regard to poverty or riches, and no one was accepted in the residence who could not pay a minimum fee of $115 per month, and then only if the payment was supplemented by $25. The situation would be analogous to *Santa Rosa* if respondent were charging and collecting rates from some persons sufficiently high to bear the cost of providing services to others who were unable to pay anything.

The judgment of the court of civil appeals is reversed and the trial court's judgment is affirmed. The parties will have fifteen days in which to file a motion for rehearing.

**I.** Emphasis ours throughout.