**BAPTIST MEMORIALS GERIATRIC CENTER, Appellant,**

v.

**TOM GREEN COUNTY APPRAISAL DISTRICT and Tom Green County Appraisal Review Board, Appellees.**

No. 3–92–299–CV.

Court of Appeals of Texas, Austin.

April 7, 1993.

Rehearing Overruled May 19, 1993.

James M. Nias, Small, Craig & Werkenthin, Austin, for appellant.

Russell R. Graham, Calame Linebarger Graham & Pena, Austin, for appellees.

Before POWERS, ABOUSSIE and SMITH, JJ.

ABOUSSIE, Justice

■ This case presents the difficult question of whether property owned and used by a charitable organization is automatically entitled to a tax exemption without regard for the property's use or purpose. We hold that it is not. Therefore, we will affirm the judgment of the district court.

## BACKGROUND

Baptist Memorials Geriatric Center ("Baptist Memorials") is a non-profit corporation organized under the supervision and control of the Baptist General Convention of Texas. Baptist Memorials operates an impressive facility in San Angelo that includes a hospital, nursing home, and residential complex [1] for the elderly. The Tom Green County Appraisal District ("the District") and the Review Board granted Baptist Memorials a charitable exemption for the hospital and nursing home while denying this exemption for its residential complex. Baptist Memorials challenged this ruling by bringing an action in the district court. The court submitted a charge to the jury, and it answered as follows:

You are instructed that use of exempt property by persons who are not charitable organizations does not result in the loss of an exemption if the use is incidental to use by qualified charitable organizations and limited to activities that benefit the beneficiaries of the charitable organizations that own or use the property.

You are instructed that performance of noncharitable functions by a charitable organization that owns or uses exempt property does not result in loss of an exemption if those other functions are incidental to the organization's charitable functions.

You are instructed that "charitable" implies giving without consideration or expectation of return and means more than mere alms-giving or the relief of poverty and distress.

You are instructed that "subject property" means the Highrise and the houses and duplexes and related personal property located in the Village at Baptist Memorials Geriatric Center.

QUESTION 1: Do you find from a preponderance of the evidence that during 1990, Baptist Memorials Geriatric Center owned the subject property?

ANSWER: YES

QUESTION 2: Do you find from a preponderance of the evidence that during 1990, all the subject property was used exclusively by Baptist Memorials Geriatric Center?

ANSWER: YES

QUESTION 3: Do you find from a preponderance of the evidence that during 1990, the subject property was used exclusively in one or more of the following charitable functions:

(a) providing medical care without regard to the beneficiaries' ability to pay;

(b) providing support to elderly persons or the handicapped without regard to the beneficiaries' ability to pay;

---

1. The residential complex consists of a highrise building containing both apartments and motel units and a "village" of houses and duplexes.

(c) providing permanent housing and related social, health care, and educational facilities for persons who are 62 years of age or over without regard to the residents' ability to pay?

ANSWER: NO

QUESTION 4: Do you find from a preponderance of the evidence that during 1990, Baptist Memorials Geriatric Center operated in such a way that there was no realization of any form of private gain?

ANSWER: YES

QUESTION 5: Do you find from a preponderance of the evidence that during 1990, Baptist Memorials Geriatric Center made no gain or profit?

ANSWER: YES

QUESTION 6: Do you find from a preponderance of the evidence that Baptist Memorials Geriatric Center operates the subject property in a way that accomplishes ends which are wholly benevolent by engaging in humanitarian services maintained to care for the physical or mental well being of its recipients?

ANSWER: YES

QUESTION 7: Do you find from a preponderance of the evidence that Baptist Memorials Geriatric Center operates the subject property in a way that affects all the people of the community or the state by assuming, to a material extent, services which otherwise might devolve to and become the obligations of the community or state?

ANSWER: NO

The trial court rendered judgment in favor of the District on the basis that Baptist Memorials met neither constitutional nor statutory requirements for a charitable exemption for the residential complex. Baptist Memorials asserts four points of error on appeal, while the District raises two cross-points.

## DISCUSSION

The Texas Constitution provides:

[T]he legislature may, by general laws, exempt from taxation ... *all buildings used exclusively and owned by ... institutions of purely public charity;* and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void.

Tex. Const. art. VIII, § 2(a) (emphasis added).

The Tax Code contains the requirements established by the Legislature in order for property to qualify for a charitable exemption from taxation:

(a) An organization that qualifies as a charitable organization as provided by this section is entitled to an exemption from taxation of the buildings and tangible personal property that:

(1) are owned by the charitable organization; and

(2) except as permitted by Subsection (b) of this section, are used exclusively by qualified charitable organizations.

(b) Use of exempt property by persons who are not charitable organizations qualified as provided by this section does not result in the loss of an exemption authorized by this section if the use is incidental to use by qualified charitable organizations and limited to activities that benefit the beneficiaries of the charitable organizations that own or use the property.

(c) To qualify as a charitable organization for the purposes of this section, an organization ... must meet the applicable requirements of Subsections (d), (e), (f), and (g) of this section.

(d) A charitable organization must be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by Subsection (h) of this section, engage exclusively in performing one or more of the following charitable functions:

(1) providing medical care without regard to the beneficiaries' ability to pay;

. . . . .

(3) providing support to elderly persons or the handicapped without regard to the beneficiaries' ability to pay;

. . . . .

(13) providing permanent housing and related social, health care, and edu-

cational facilities for persons who are 62 years of age or older without regard to the residents' ability to pay;

.    .    .    .    .

(e) A charitable organization must be operated in a way that does not result in ... realization of private gain

. . . .

(h) Performance of noncharitable functions by a charitable organization that owns or uses exempt property does not result in loss of an exemption authorized by this section if those other functions are incidental to the organization's charitable functions.

Tex.Tax Code Ann. § 11.18 (West 1992).[2]

■■■ Exemptions from taxation are not favored by the law and will not be favorably construed. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex.1991). Statutory exemptions are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpayers rather than all. *Id.*

■■■ The Texas Supreme Court has recognized that before an organization is eligible to qualify for tax exempt status under section 11.18 of the Tax Code, the organization must first satisfy the applicable constitutional requirements that entitle an organization to seek the exemption. *North Alamo*, 804 S.W.2d at 899. The constitution requires that the organization be an institution of purely public charity. In order for an organization to qualify under the constitution as a "purely public charity," the organization must meet three requirements: (1) it must make no gain or profit; (2) it must be organized to accomplish ends wholly benevolent by engaging in humanitarian services maintained to care for the physical or mental well-being of its recipients; and (3) the total operation of the charity must affect all the people of a community or state by assuming, to a ma-

terial extent, services that otherwise might devolve to and become the obligations of the community or state. *Id.; City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y*, 530 S.W.2d 806, 808–09 (Tex.1975) (citing *City of Houston v. Scottish Rite Benevolent Ass'n*, 111 Tex. 191, 230 S.W. 978, 981 (1921)). The entity must then meet the statutory definition of a "charitable organization" found in section 11.18 of the Tax Code.

Baptist Memorials contends it is indisputedly a qualified charitable organization.[3] In effect, it suggests that tax exemption of its property must be decided as one package. Individual scrutiny is relevant only as to its total operation as an organization. If it is not a charitable organization, none of its property can be exempt from taxation. Because it is a charity serving the public, it argues, all of its eligible property must be exempt. Neither party challenges the tax exemption on the properties not in dispute and we render no opinion with respect to those.

■■■ In any event, an organization that qualifies as both a "purely public charity" and a "charitable organization" faces another hurdle mandated by the constitution and Tax Code. Only buildings and certain properties used exclusively and owned by the charity may be exempt from taxation. Baptist Memorials, relying solely upon section 11.18(a) of the Tax Code, argues on appeal that the plain meaning of the statute requires us to hold that all buildings owned and used exclusively by a charitable institution are automatically tax-exempt, including its residential complex. The supreme court, however, has foreclosed such an interpretation.

The court has repeatedly discussed the meaning of the constitutional provision authorizing charitable tax exemptions. The court first addressed the awkward wording of the relevant constitutional provision in a case decided just eleven years after the

---

**2.** All further references to the Tax Code are from Tex.Tax Code Ann. (West 1992).

**3.** Baptist Memorials notes that counsel for the District admitted at trial that it was a charitable

organization and that the District granted exemptions for the hospital and nursing home based on Baptist Memorials' charitable status.

constitution was enacted. This cause involved a building owned by a Masonic organization that was partly leased to parties who did not perform charitable functions. The lower court found the Masonic body to be an institution of purely public charity and inquired no further. The supreme court noted:

> If it can be shown that property belonging to a charitable association, not directly and exclusively used by it *in furtherance of its charitable purposes*, but partly rented for profit, though its resources be exclusively devoted to the objects of the charity, is not exempt from taxation in our state, it will be unnecessary to determine whether or not the [Masonic body] can be deemed an "institution of purely public charity."

*Morris v. Lone Star Chapter No. 6, Royal Arch Masons*, 68 Tex. 698, 5 S.W. 519, 519 (1887) (emphasis added). The court held that the phrase "all buildings used exclusively and owned by" modified "institutions of purely public charity" despite the separation of the two phrases in a long sentence. Because the property in issue was not used exclusively by the charity, the court held it could not be tax-exempt. It stated, "We are of the opinion that [this] reading gives the more reasonable construction of the language as used in the constitution of our state.... If it had been intended to exempt all the property of charitable institutions, it would seem that more general terms would have been used." *Id.*, 5 S.W. at 520. The court concluded, "The property in controversy having been leased for purposes of profit, we think the court below erred in holding it exempt from taxation." *Id.* at 522.

Almost a century later, the supreme court restated its reasoning:

> Because of the wording of Sec. 2, Art. VIII [of the Constitution], as it was written originally, we held in [*Morris* ] that it did not authorize exemptions of institutions of purely public charity as such but only that property which was owned by such institutions *and was used exclusively by them for purely public charity*. We have adhered to that construction through the years in spite of fre-

quent changes in internal language and punctuation in the section, and have denied exemption of property, not used exclusively by the owner *for purposes of purely public charity*.

*River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851, 853 (Tex.1963) (emphasis added).

Although section 2 has been amended numerous times, the supreme court nevertheless has consistently interpreted the controlling constitutional provision. An institution must be one of "purely public charity," satisfying the definition outlined in *North Alamo*. In addition, "[T]he properties which are the subject of the claimed exemption must be owned and used exclusively by the institution in furthering its charitable activities.... [T]here must be a dedication of the properties to charitable uses accompanied by actual uses for such purposes." *Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist.*, 426 S.W.2d 943, 946–47 (Tex.1968), *disapproved on other grounds, City of McAllen*, 530 S.W.2d at 811 (charter and by-law declarations alone are not conclusive of charitable nature of institution); *see also City of Waco v. Texas Retired Teacher Residence Corp.*, 464 S.W.2d 346, 347 (Tex.1971); *Willacy County Appraisal Dist. v. North Alamo Water Supply Corp.*, 676 S.W.2d 632, 636 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). As the supreme court has observed, "It has often been held that a charitable institution is entitled to exemption of only that property which is used by the institution exclusively for purely public charity." *City of McAllen*, 530 S.W.2d at 810. While every incidental use of the property need not be gratuitous, the law requires that the character of the institution and the nature of the disputed property's use be clearly charitable.

■ Frequently, the legal dispute over tax exemption concerns whether an organization qualifies as a charitable organization. Even assuming it does, the constitution nevertheless requires that its property not only be used by the charity but it must be used in furtherance of the institution's

charitable purpose. This interpretation of the constitution has prevailed from 1887 until the present. *See City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M.*, 488 S.W.2d 69, 72 (Tex.1972); *City of Dallas v. Women's Auxiliary*, 620 S.W.2d 695, 697 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

■ Section 11.18(a) of the Tax Code contains language similar to that of the constitution regarding the ownership and exclusive use of property by a charitable organization. This statutory provision must be read in harmony with the supreme court's interpretation of the constitutional requirements. Constitutional requirements must be met before an organization can qualify for tax-exempt status under section 11.18. *North Alamo*, 804 S.W.2d at 899. The Legislature cannot exempt property from tax liability unless it comes within the constitution's permissible framework.

Baptist Memorials argues that because it is a charitable organization, the statute provides that all buildings it owns and uses are automatically entitled to tax exempt status, relying upon section 11.18(a) of the Tax Code. In its first point of error, it asserts that the jury's favorable answers to the first two questions, finding that the property was owned and used exclusively by Baptist Memorials, required the district court to render judgment in its favor in accordance with the statute.

■ The constitution, however, additionally requires that the property's use must be for purposes that further the charitable goals of the organization. *Masons*, 5 S.W. at 520. The charity not only must actually use the property but must actually use the property in furtherance of its charitable purpose. *Hilltop*, 426 S.W.2d at 947. We conclude that the statutory requirement concerning the property's use necessarily requires that the use be in furtherance of

the organization's charitable purpose in order to qualify for tax exemption.

We must reject the argument that the district court was required to render judgment based upon the jury's answers to the first two questions. Findings of ownership and use by a charitable organization are not sufficient; the charity also must use the property for its charitable purposes. Baptist Memorials did not suggest a jury question on the property's charitable use. The court did submit questions 3 and 7 to the jury. Assuming these inquiries relate to the charitable use requirement, the jury's negative answers reflect that Baptist Memorials failed to carry its burden of proof on the issue. We overrule its first point of error.

■ Baptist Memorials' second point of error complains that the district court improperly instructed the jury that in answering questions 3 and 7, it should consider only the residential complex, the high-rise and Village, contending instead that the total operation of Baptist Memorials is the relevant focus.[4] We disagree. The total operation may determine whether the organization meets the requirements of a "purely public charity," *North Alamo*, 804 S.W.2d at 898–99, but the property itself, not the organization, is what qualifies for tax exemption. *City of Amarillo*, 488 S.W.2d at 72; *River Oaks*, 370 S.W.2d at 853. The functions performed by the charity on its other property, whether this property is adjacent or across the state, are not controlling on the issue of whether a particular property is exempt from taxation.[5] We overrule the second point of error.

■ Baptist Memorials' last two points of error complain that the evidence at trial conclusively required an affirmative answer to question 3 and question 7 or, alternatively, that the jury's negative answers to these questions were against the great weight and preponderance of the evidence.

---

4. Again, we assume that questions 3 and 7 are relevant to the issue of whether the residential complex was used in furtherance of Baptist Memorials' charitable purposes as an organization.

5. We note that an organization does not lose the tax exemption on qualified property merely because it may also perform noncharitable functions, so long as these functions are incidental to the main charitable purpose of the organization. Tax Code § 11.18(h).

A party in this position has a very difficult burden on appeal attempting to reverse the jury's verdict when the evidence is conflicting and the facts are in dispute.

■ Whether an organization is a purely public charity is a question of fact. *First Baptist/Amarillo Found. v. Potter County Appraisal Dist.*, 813 S.W.2d 192, 195 (Tex.App.—Amarillo 1991, no writ); *Lamb County Appraisal Dist. v. South Plains Hosp.–Clinic, Inc.*, 688 S.W.2d 896, 903 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). Similarly, whether the property in dispute is used in furtherance of the organization's charitable purposes is a fact issue. Here, the jury decided this fact issue against Baptist Memorials. Baptist Memorials had the burden to prove the residential complex qualified as tax-exempt. *North Alamo*, 804 S.W.2d at 899. Baptist Memorials thus had the burden to request jury questions on facts it was attempting to prove, including whether its use of the residential complex was in furtherance of its charitable goals. It did not submit question 3 or question 7; it objected that question 7 should not be submitted at all; and it objected to the focus of both questions, as discussed above. Even assuming that affirmative answers to these questions would support a judgment for Baptist Memorials, and further assuming that Baptist Memorials is now entitled to assert these complaints on appeal, we nevertheless cannot sustain its points of error.

Baptist Memorials attempts to overcome adverse answers to jury questions on which it had the burden of proof, claiming it proved the facts as a matter of law. In considering a legal sufficiency complaint, we must first consider only the evidence and inferences tending to support the verdict and disregard all evidence and inferences to the contrary. If there is no evidence to support the answer, then we examine the entire record to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). Baptist Memorials alternatively asserts a factual sufficiency challenge. For such a

point, we must consider and weigh all the evidence and should set aside the jury's answer only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951).

Questions 3 and 7 were directed to the use of the subject property, the residential complex. The jury failed to find that Baptist Memorials used the residential complex to provide charitable services to the elderly and beneficiaries regardless of each person's ability to pay. The jury also declined to find that the property operated for the benefit of all by providing services that the community might otherwise be required to assume.

Without attempting to recount all the evidence presented, the record reveals that the residential village was built long after the hospital and nursing facilities. Some of the houses in the Village were sold for $65,000 with no proof of any accommodation made for purchase by prospective residents of modest means. The institution's president testified that residents were placed "strictly on the economics of it.... It would be based primarily on how much we had in the unit and what we could do." Upon a resident's death, ownership of the unit reverted to Baptist Memorials, and the resident's survivors retained no interest and received no compensation for the property. The only favorable evidence to which Baptist Memorials refers us reveals that some residents of modest means lived in the complex and that the complex operated at a loss in 1990. The record reflects that since the residential complex was constructed it had never advertised its services as being available to the community regardless of financial status; the record lacks evidence that services *were* provided regardless of a person's ability to pay. The proof showed that in 1990 all comparable units rented for the same rate without regard to ability to pay, all tenants paid that amount, and only one tenant's rent

had not been collected. We conclude there was some evidence to support the jury's failure to return a favorable answer to questions 3 and 7; furthermore, we hold the jury's answers were not against the great weight and preponderance of the evidence. We overrule Baptist Memorials' third and fourth points of error.[6]

Having overruled all of appellant's points, we need not address the District's cross-points. Therefore, we affirm the judgment of the district court.

---

**6.** We believe our opinion is consistent with the Supreme Court's decision in *City of McAllen.* The court there overruled *Hilltop*'s holding that an organization must pledge its property and assets in perpetuity to the relief of persons in financial need and to the assistance in obtaining care. *City of McAllen*, 530 S.W.2d at 810–11. Justice Steakley, the author of *Hilltop*, expressed concern in his dissent in *City of McAllen* that the majority had weakened other precedents as well as *Hilltop. City of McAllen*, 530 S.W.2d at 812 (Steakley, dissenting).

*City of McAllen* reaffirmed *Hilltop*'s requirement that a charity must use its property in furtherance of its charitable purposes. *City of McAllen*, 530 S.W.2d at 809. In citing *City of McAllen*, another court of appeals noted it must apply "this 'actual use in fact' test" when deciding "whether [the organization] qualifies as a tax-exempt public charity." *State v. Alliance Village, Inc.*, 592 S.W.2d 687, 689 (Tex.Civ. App.—Corpus Christi 1979, no writ).

Baptist Memorials cites *City of McAllen* in support of its contention that the total charitable organization must be considered instead of focusing exclusively upon the disputed property. The supreme court stated: "The ultimate consideration then, should be based upon an evaluation of the total operation of the institution engaged in humanitarian activities whose services are rendered at cost or less and which are maintained to care for the physical and mental well-being of the recipient." *Id.* at 810. The

court's opinion emphasizes the particular institution located on the property, not the organization as a whole, is the proper focus.

Finally, *City of McAllen* disapproved of any requirement that every act of a purely public charity must dispense absolute gratuities. *Id.* at 809. An institution may have more paying patients than non-paying patients. *Id.* at 810. It may perform religious purposes so long as the charitable requirements are met. *Id.* at 810–11. However, *City of McAllen* held a charitable organization would not be disqualified *as a matter of law* from claiming a tax exemption if such conditions existed. The court affirmed the trial court's injunction in favor of the charitable organization. Since *City of McAllen*, Texas courts have generally affirmed the finder of fact's decision on the question of whether an organization which does not dispense absolute gratuities meets the requirements for tax-exempt status. *Compare Dallas County Appraisal Dist. v. The Leaves, Inc.*, 742 S.W.2d 424 (Tex.App.—Dallas 1987, writ denied) (findings in favor of charitable organization) *and Needville Indep. Sch. Dist. v. S.P.J.S.T. Rest Home*, 566 S.W.2d 40 (Tex.Civ. App.—Beaumont 1978, no writ) *with First Baptist and Air Force Village Found., Inc., v. Northside Indep. Sch. Dist.*, 561 S.W.2d 905 (Tex.Civ. App.—El Paso 1978, writ ref'd n.r.e.) (findings in favor of taxing entity). Here, the jury indicated by its verdict that Baptist Memorials failed to meet its burden of proof that the residential complex qualified for tax-exempt status.