OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 27, 2000

The Honorable Susan D. Reed
Bexar County Criminal District Attorney
Bexar County Justice Center
300 Dolorosa, 5th Floor
San Antonio, Texas 78711-2548

Opinion No. JC-0300

Re: Whether under section 312.206(a) of the Tax Code a county commissioners court is authorized to enter into a tax abatement agreement only with the owner of taxable real property, and related questions (RQ-0212-JC)

Dear Ms. Reed:

The Property Redevelopment and Tax Abatement Act, chapter 312 of the Tax Code, allows the governing bodies of taxing units to enter into tax abatement agreements with respect to property located in a reinvestment zone, under certain circumstances, for the purpose of economic development of the property. You ask whether under section 312.206(a) of the Tax Code, a commissioners court is authorized to enter into a tax abatement agreement only with the "owner of taxable real property."[1] *See* TEX. TAX CODE ANN. § 312.206(a) (Vernon Supp. 2000). If the commissioners court is so limited, you also ask whether an owner of a leasehold interest in tax-exempt real property may be considered an "owner of taxable real property" for the purposes of section 312.206(a). *See* Request Letter, note 1, at 2, 7. We conclude that section 312.206(a) authorizes a commissioners court to enter into a tax abatement agreement only with the "owner of taxable real property" and that the owner of a leasehold interest in tax-exempt real property is not such an "owner of taxable real property."

The circumstances prompting your request are as follows: The Commissioners Court of Bexar County has entered into a tax abatement agreement with Boeing Aerospace Operations, Inc. ("Boeing") for a ten-year term conditioned on Boeing investing in tangible personal property to be located at its leased facility at Kelly Air Force Base in San Antonio. The federally owned base, which is being realigned and will close in the year 2001, is located in the San Antonio Defense Economic Readjustment Zone (the "Zone") established by the City of San Antonio (the "City") pursuant to chapter 2310 of the Government Code. Boeing leases its facility from the Greater Kelly Development Authority (the "GKDA"), the Zone's administrative authority, to which the property has been conditionally conveyed by the federal government. Pursuant to chapter 2310, designation of an area as a readjustment zone constitutes designation of the area as a reinvestment zone for tax

---

[1]Letter from Honorable Susan D. Reed, Bexar County Criminal District Attorney, to Honorable John Cornyn at 3, 7 (Mar. 30, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

abatement purposes under chapter 312 of the Tax Code. The City entered into a tax abatement agreement with Boeing; and because the county must enter into any tax agreement with Boeing under section 312.206(a) of the Tax Code within ninety days of the execution of the municipal agreement, the county entered into the tax abatement agreement with Boeing subject to an attorney general opinion concluding that Boeing is entitled to the tax abatement. *See* Request Letter, *supra* note 1, at 1-2.

You first ask: "Is a tax phase-in agreement entered into by a county under authority of Tax Code § 312.206 required to comply with Tax Code § 312.204[(a)] relating to municipalities?" Request Letter, *supra* note 1, at 7. We conclude in the affirmative.

Based on the information provided, we understand that the county seeks to exempt taxes on the tangible personal property that Boeing will acquire for its tax-exempt leased facility located in an area within the City of San Antonio and designated a readjustment zone pursuant to chapter 2310 of the Government Code. Section 2310.407 of that chapter provides that "[d]esignation of an area as a readjustment zone is also designation of the area as a reinvestment zone for: (1) tax increment financing under Chapter 311, Tax Code; and (2) tax abatement under Chapter 312, Tax Code." TEX. GOV'T CODE ANN. § 2310.407 (Vernon 2000).

Section 312.204(a) of the Tax Code authorizes an eligible city to enter into a tax abatement agreement with the owner of taxable real property in a reinvestment zone within its taxing jurisdiction by providing that:

> The governing body of a municipality eligible to enter into tax abatement agreements . . . may agree in writing with *the owner of taxable real property* that is located in a reinvestment zone, but that is not in an improvement project financed by tax increment bonds, to exempt from taxation a portion of the value of the real property or of tangible personal property located on the real property, or both . . . .

TEX. TAX CODE ANN. § 312.204(a) (Vernon Supp. 2000) (emphasis added). If a city executes a tax abatement agreement with respect to property in a municipal reinvestment zone, other eligible taxing units in which the property is located may also do so. Section 312.206(a) provides in pertinent part that:

> If property taxes on property located in the taxing jurisdiction of a municipality are abated *under an agreement made under Section 312.204* or 312.211,[2] the governing body of each other taxing unit

---

[2]Section 312.211 deals with real property that is the subject of a voluntary cleanup agreement under section 361.606 of the Health and Safety Code and personal property located on the real property. *See* TEX. TAX CODE ANN. § 312.211(a) (Vernon Supp. 2000). A city may enter into an agreement with the "owner of property described by

(continued...)

> eligible to enter into tax abatement agreements under Section 312.002 in which the property is located may execute a written tax abatement agreement with *the owner of the property* not later than the 90th day after the date the municipal agreement is executed. The agreement is not required to contain terms identical to those contained in the agreement with the municipality. Section 312.205[3] applies to an agreement made by a taxing unit under this section in the same manner as it applies to an agreement made by a municipality under Section 312.204 or 312.211.

*Id.* § 312.206(a) (emphasis added) (footnotes added); *see also id.* § 312.206(c) (other taxing units authorized to execute tax abatement agreements with owner of property in reinvestment zone in city's extraterritorial jurisdiction subject to restrictions in section 312.204 or 312.211, even if municipality does not execute an agreement).

Your question requires us to construe section 312.206(a). When construing a statute, "our primary objective is to give effect to the legislature's intent." *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To give effect to legislative intent, we construe a statute according to its plain language. *See RepublicBank Dallas v. Interkal, Inc.*, 691 S.W.2d 605, 607-08 (Tex. 1985); *Bouldin v. Bexar County Sheriff's Civil Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.–San Antonio 1999, no pet.). Statutory words and phrases must be "read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). Finally, exemptions from taxation are not favored by the law, and "[s]tatutory exemptions are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpayers rather than all." *Baptist Mem'ls Geriatric Ctr. v. Tom Green County Appraisal Dist.*, 851 S.W.2d 938, 942 (Tex. App.–Austin 1993, writ denied) (citing *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991)). Courts apply this rule of strict construction to measures that effectively reduce or allow items to escape taxation as they are tantamount to tax exemptions. *See, e.g., Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979); *State Bd. of Ins. v. Petroleum Cas. Co.*, 447 S.W.2d 666, 668 (Tex. 1969); *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.–Austin 1998, pet. denied). Tax abatement is a form of tax exemption or relief from ad valorem taxes on property located in a reinvestment zone. *See* TEX. CONST. art. VIII, § 1-g (amendment to equal and uniform provision permitting legislature to authorize taxing units to grant

---

[2](...continued)
Subsection (a)" under section 312.211 or under section 312.204, but not under both sections. *Id.* § 312.211(g). We do not understand the real property in question to be the subject of a voluntary cleanup agreement.

[3]Section 312.205 sets out certain "terms" that must be included or addressed in a tax abatement agreement. *See id.* § 312.205.

tax exemptions or other tax relief from ad valorem property taxes on property located in reinvestment zone to encourage development); Tex. Att'y Gen. Op. No. JC-0092 (1999) (tax abatement provision enacted to implement art. VIII, § 1-g); TEX. TAX CODE ANN. § 312.204(a) (Vernon Supp. 2000) (city eligible to enter into tax abatement agreement may thereby agree "to exempt from taxation a portion of the value of the real property or of tangible personal property").

By its terms, section 312.206(a) authorizes a tax abatement agreement only with the owner of taxable real property. *See* TEX. TAX CODE ANN. § 312.206(a) (Vernon Supp. 2000). A county's authority under section 312.206(a) is derivative of a city's authority to enter into a tax abatement agreement under section 312.204(a) of the Tax Code.[4] *See id.* §§ 312.204(a), .206(a). Section 312.204(a) authorizes a city to enter into an agreement with the "owner of taxable real property." *Compare id.* § 312.204(a), *with id.* § 312.204(e) (eligible municipality authorized to execute tax abatement agreement with owner or lessee of real property when property owned or leased by certificated air carrier). Section 312.206(a) specifically provides that "[i]f property taxes on property located in the taxing jurisdiction of a municipality are abated *under an agreement made under Section 312.204* . . . each other taxing unit eligible . . . may execute a written tax abatement agreement with the *owner of the property* . . . ." *Id.* § 312.206(a) (emphasis added). "Owner of the property" here necessarily refers back to the owner of the taxable real property with whom the city has executed an "agreement made under Section 312.204" in the preceding phrase. *See RepublicBank Dallas,* 691 S.W.2d at 607 (to effect legislative intent, statute to be construed according to its plain language); TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (word and phrases to be "read in context and construed according to the rules of grammar and common usage"). Thus section 312.206(a) authorizes tax abatement agreements with the "owner of taxable real property."

This construction is consistent with the tax abatement provisions of chapter 312. *See Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex. 1998) (legislative intent to be determined from entire act not simply from isolated portions of act); *Sayre v. Mullins,* 681 S.W.2d 25, 27 (Tex. 1984) (in determining meaning of statutory language, statute to be read as whole giving consideration to entire act, its nature and object, and consequences that would follow from particular construction). As discussed above, under section 312.204(a), an eligible city is authorized to enter a tax abatement agreement only with the owner of the taxable real property. Pursuant to section 312.402, a county, under its independent tax abatement agreement authority with respect to property located in a county designated reinvestment zone, is also authorized to enter tax abatement agreements only with the owner of taxable real property: "The commissioners court may execute a tax abatement agreement with the owner of taxable real property located in a reinvestment zone designated under this subchapter [C: Tax Abatement in County Reinvestment Zone]." TEX. TAX CODE ANN. § 312.402(a) (Vernon Supp. 2000).[5] Like the section 312.204(a) and 312.206(a) scheme, if the county enters into

---

[4]*See supra* note 2.

[5]*See also id.* § 312.401 (Vernon 1992) (authorizing county to designate reinvestment zone in area of county

(continued...)

a tax abatement agreement under section 312.402(a), other taxing units in which the property is located may also enter into agreements abating taxes on that property. *See id.* § 312.402(b). It would be an anomalous result if a city and a county under their independent authority could not enter into a tax abatement agreement with persons other than the owner of taxable real property, but a taxing unit, including a county, could do so under their derivative authority. The legislature could not have intended such a result given that when it has desired to authorize a taxing unit to execute a tax abatement agreement with persons other than the owner of taxable real property in chapter 312, it has so expressly provided. Subsection (e) of section 312.204 authorizes an eligible city to execute tax abatement agreements "with the *owner or lessee of real property* that is located in a reinvestment zone to exempt from taxation . . . a portion of the value of the real property or of personal property, or both, located within the zone and *owned or leased by* a certificated air carrier." *Id.* § 312.204(e).

We do not believe that section 312.204(a) is permissive. *See Baptist Mem'ls Geriatric Ctr.*, 851 S.W.2d at 942 (statutory tax exemptions subject to strict construction). Execution of the agreement with the owner of taxable real property is not an optional "term" of the agreement, such as the portion of the property to be exempted from taxation or the duration of the agreement, *see* TEX. TAX CODE ANN. § 312.206(c), (e) (Vernon Supp. 2000), or the kind or number of improvements to be made, with which a county need not comply. *See id.* § 312.206(a) ("The agreement is not required to contain terms identical to those contained in the agreement with the municipality."). Rather, it is a prerequisite to the execution of the agreement in the first instance. *See id.* ("each other taxing unit eligible . . . may execute a written tax abatement agreement with the owner of the property").

You also ask: "May a county, pursuant to Tax Code § 312.206, rely on a city's agreement to abate taxes on property located in its jurisdiction as the county's sole authority to enter into an agreement with the same property owner?" Request Letter, *supra* note 1, at 7. In essence, you ask whether a county may enter into a tax abatement agreement with an entity that is not the owner of taxable real property simply because a city has entered into an abatement agreement with that entity. Based on our conclusion that, under section 312.206(a), a commissioners court is authorized to enter into a tax abatement agreement only with the owner of taxable real property, we conclude in the negative.

If a section 312.206(a) county tax abatement agreement must be with the owner of taxable real property, you next ask: "[M]ay Boeing be considered an 'owner of taxable real property' under Tax Code § 312.204(a) by virtue of it owning and controlling a leasehold interest in tax-exempt real property owned by the United States Government, and conveyed to the [GKDA], located within the San Antonio Defense Economic Readjustment Zone that has been established at Kelly Air Force Base?" *Id.* We conclude in the negative.

---

[5](...continued)
that does not include area in taxing jurisdiction of any municipality).

First, construing Boeing's tax-exempt leasehold interest to qualify for tax abatement under section 312.206(a) would require reading out of the statute the term "taxable" contrary to established principles of statutory construction. We must give effect to each word in a statute when possible because it is a well-established rule of statutory construction that every word in a statute is presumed to have been used for a purpose and that the legislature did not intend to do a useless act by putting in a meaningless provision. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978); *Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 600 (Tex. 1975); *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963). Giving effect to the term "taxable," it is an inescapable conclusion that real property on which taxes are authorized to be abated under section 312.206(a) must be taxable. While a leasehold interest in tax-exempt real property that "may be [of] at least one year" duration is generally taxable, *see* TEX. TAX CODE ANN. § 25.07(a) (Vernon Supp. 2000), Boeing's leasehold interest is tax-exempt pursuant to a "grandfather" provision of the Development Corporation Act of 1979. *See* Request Letter, *supra* note 1, at 5-6; *see also* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(k) (Vernon Supp. 2000). Thus, even assuming that a leasehold interest constitutes ownership of real property, the leasehold interest here is *not* taxable.

Moreover, we do not believe a lessee of real property is an "owner of real property" within the meaning of section 312.204(a). First, a lessee, by definition, is not the "owner" of the real property. *See, e.g.*, BLACK'S LAW DICTIONARY 898 (7th ed. 1999) (defining "lease" as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration, usu. rent."); *id.* at 914 (defining "lessee" as [o]ne who has a possessory interest in real or personal property under a lease; TENANT."). Second, and more important, the legislature clearly does not believe or intend "owner of real property" to encompass a lessee of that property because when the legislature wishes to provide tax abatement to a lessee of real property, it has done so expressly. Subsection (e) of section 312.204 expressly authorizes an eligible city to execute tax abatement agreements with the *owner or lessee* of real property: "The governing body of a municipality . . . may agree in writing with the *owner or lessee of real property* that is located in a reinvestment zone to exempt from taxation . . . a portion of the value of the real property or of personal property, or both, located within the zone and *owned or leased by* a certificated air carrier . . . ." TEX. TAX CODE ANN. § 312.204(e) (Vernon Supp. 2000). As the Texas Supreme Court has said: "'It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.'" *Laidlaw Waste Sys.*, 904 S.W.2d at 659 (citation omitted). If the legislature intended lessees of real property to be eligible for tax abatement under section 312.204(a), it would have expressly so provided as it did in another section of the same statute.

We do not believe that Letter Opinion 98-001, construing section 312.402(d) which prohibits a commissioners court from entering into a tax abatement agreement regarding property "owned or leased by a member of the commissioners court," supports a contrary interpretation. TEX. TAX CODE ANN. § 312.402(d) (Vernon Supp. 2000); *see also* Tex. Att'y Gen. LO-98-001. Relying on the

ordinary meaning of the terms "own" and "owner,"[6] this office in Letter Opinion 98-001 determined that:

> the terms "owned" and "owner" in chapter 312 refer to property interest that includes *at least* some degree of control over the property and do not embrace a mere beneficial or equitable interest in property completely lacking such control. A person who holds legal title to property and owns the property in fee simple is clearly an owner for purposes of chapter 312. We also believe that the sole shareholder of a corporation who has the authority to dispose of corporate assets may be an owner of corporate property for purposes of the chapter. We do not believe, however, that the owner of a very small percentage of a publicly-held corporation's shares can be said to own corporate property for purposes of chapter 312.

Tex. Att'y Gen. LO-98-001, at 3 (footnote omitted) (emphasis added). Although Letter Opinion 98-001 indicates that an "owner" for the purpose of chapter 312 may include the holder of property interest including some degree of control short of legal title in fee simple, it cannot reasonably be read to include a leasehold interest when such an interest is specifically and separately provided for under chapter 312.

Although you ask us only about section 312.206 of the Tax Code, a brief submitted by the City of San Antonio argues that the county is authorized to enter into a tax abatement agreement with Boeing, as the owner of the personal property on which taxes are to be abated, under section 311.0125 of the Tax Code.[7] We disagree. While section 311.0125 does provide that a "taxing unit other than a school district may enter into a tax abatement agreement with an owner of real *or personal property* in a reinvestment zone," TEX. TAX CODE ANN. § 311.0125 (Vernon Supp. 2000), we believe section 311.0125 does not apply here for two reasons.

First, section 311.0125's application, in our opinion, is limited to tax increment financing reinvestment zones. Unlike chapter 312 of the Tax Code dealing specifically and comprehensively with tax abatement, chapter 311, the Tax Increment Financing Act, deals with the financing of projects in a reinvestment zone, which must be done in accordance with a project and financing plan

---

[6]The Oxford English Dictionary defines the term "owner" as "[o]ne who owns or holds something as his own; a proprietor; one who has the rightful claim or title to a thing (though he may not be in possession); . . . ." XI OXFORD ENGLISH DICTIONARY 6 (2d ed. 1989). Black's Law Dictionary defines "owner" as "[o]ne who has the right to possess, use, and convey something; a proprietor." BLACK'S LAW DICTIONARY 1130 (7th ed. 1999).

[7]Brief from Frank J. Garza, San Antonio City Attorney, to Honorable John Cornyn, Texas Attorney General at 8-9 (Aug. 1, 2000) (on file with Opinion Committee).

for the reinvestment zone adopted by the zone's board of directors with "tax increments"[8] remitted by participating taxing units or proceeds of tax increment bonds or notes. *See id.* §§ 311.001, .002, .003, .004, .008, .010, .011, .013, .014, .015 (Vernon 1992 & Supp. 2000). As described by the Texas Supreme Court, the statute is "designed to aid . . . in financing public improvements in blighted or underdeveloped areas[,]" and "[a]ny increase in ad valorem tax revenues from land within the zone is then committed to the purchase of property, improvement of approved property, or retirement of revenue bonds issued to provide funding for the approved projects." *City of El Paso v. El Paso Community College Dist.*, 729 S.W.2d 296 (Tex. 1986). Section 311.0125 authorizes tax abatement for personal and real property in a reinvestment zone, tax relief that is not otherwise authorized in tax increment financing reinvestment zones. *See* TEX. TAX CODE ANN. ch. 311 (Vernon 1992 & Supp. 2000); *City of El Paso*, 729 S.W.2d at 296 (increased real property tax revenues committed to improvements). Specifically, the statute authorizes a taxing unit, other than a school district, to enter into tax abatement agreements regardless of whether the taxing unit "deposits or agrees to deposit any portion of its tax increment into the tax increment fund[,]" TEX. TAX CODE ANN. § 311.0125(a) (Vernon Supp. 2000); provides that to be effective, agreements to abate taxes on real property must be approved by the reinvestment zone's board of directors and any taxing unit that levies real property taxes in the zone and deposits or has agreed to deposit tax increments into the zone's tax increment fund, *see id.* § 311.0125(b); authorizes the zone's board of directors to covenant in connection with bonds or other obligations that the board will not approve real property tax abatement agreements, *see id.* § 311.0125(c); and provides that if a taxing unit enters into a tax abatement agreement, taxes abated are not to be considered in calculating the unit's "tax increment" or the unit's deposit to the tax increment fund for the reinvestment zone, *see id.* § 311.0125(d). Given its context and language, we construe section 311.0125 to authorize tax abatement agreements only with respect to property in a tax increment financing reinvestment zone. *See Jones*, 969 S.W.2d at 432 (legislative intent to be determined from entire act not simply from isolated portions of act); *Baptist Mem'ls Geriatric Ctr.*, 851 S.W.2d at 942 (statutory tax exemptions subject to strict construction). We do not understand the readjustment zone in question to be the subject of a tax increment financing plan.

Second, because section 311.0125 of the Tax Code is a tax abatement provision rather than a tax increment financing provision, it does not apply to a readjustment zone under chapter 2310 of the Government Code. Like chapter 312 of the Tax Code, chapter 311 applies to a readjustment zone through section 2310.407 of the Government Code providing that "[d]esignation of an area as a readjustment zone is also designation of the area as a reinvestment zone *for*: (1) *tax increment financing* under Chapter 311, Tax Code; and (2) tax abatement under Chapter 312, Tax Code." TEX. GOV'T CODE ANN. § 2310.407 (Vernon 2000) (emphasis added). Section 2310.407 by its terms makes a readjustment zone eligible only for tax increment financing under chapter 311; it does not make such a zone eligible for tax abatement under chapter 311. *See id.* § 2310.407 (Vernon Supp.

---

[8]In general, the "tax increments" are taxes derived by a taxing unit from the difference between the appraised value of all taxable real property located in a reinvestment zone for that year less the appraised value of the property when the zone was established. *See* TEX. TAX CODE ANN. § 311.012 (Vernon 1992). In other words, they are taxes attributable to the increased value of the real property in the zone presumably due to its development.

2000); *RepublicBank Dallas*, 691 S.W.2d at 607 (to effect legislative intent, statute to be construed according to its plain language); *Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659 (every word of statute presumed to be used for a purpose, and every word excluded from statute presumed to have been excluded for a purpose). If the legislature had intended to make a readjustment zone eligible for tax abatement pursuant to chapter 311, it would have so expressly provided as it did with respect to chapter 312. *Compare* TEX. GOV'T CODE ANN. § 2310.407(1) (Vernon 2000), *with id.* § 2310.407(2).

## S U M M A R Y

Section 312.206(a) of the Tax Code authorizes a commissioners court to enter into a tax abatement agreement only with the "owner of taxable real property," and the owner of a leasehold interest in tax-exempt real property is not such an "owner of taxable property."

Your very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee