Sandra SAYRE, Petitioner,

v.

Dr. Charles MULLINS et al.,
Respondents.

No. C–2994.

Supreme Court of Texas.

Nov. 21, 1984.

Walter H. Steele, Dallas, for petitioner.

Thomas L. Cox, Jr., Dallas, for respondents.

KILGARLIN, Justice.

We are confronted with the novel proposition of the right of a public employee to be represented by an attorney during grievance proceedings. Sandra Sayre, petitioner, was terminated from her job at Parkland Hospital in Dallas. Following procedures promulgated by her employer, she filed a grievance. She requested that her attorney be allowed to represent her during the various "steps" of the grievance proceedings. Parkland denied the request, and upheld the termination.

Sayre filed suit[1] seeking a judgment declaring that Parkland had acted contrary to law by denying her representation by an attorney. After an agreed statement of facts was filed with the trial court, Parkland and Sayre both filed motions for summary judgment. The trial court granted a summary judgment to all defendants[2] and

---

1. Named as defendants in the suit were Dr. Charles Mullins, Chief Executive Officer of Parkland Hospital; Dallas County Hospital District d/b/a Parkland Memorial Hospital; and, Harold Wright, Billie Martinets, Doug Mehling,

and Eileen Beasley, all supervisory personnel at Parkland.

2. Because of our holding in this case it is unnecessary to address the trial court error of rendering judgment for defendants not requesting

the court of appeals affirmed that judgment. 666 S.W.2d 332. We reverse the judgments of the courts below and remand this cause to the trial court.

Sayre, a ward clerk at Parkland, was discharged on December 10, 1980 for verbal disrespect toward Dr. Rawson J. Valentine on the previous day. Although the record does not reflect the language allegedly used by Sayre, apparently the incident was related to accusations that another female employee rubbed Dr. Valentine's back in the doctor's station. In any event, Sayre vehemently denies making any disrespectful statement to Dr. Valentine.

In May 1979, Parkland had unilaterally adopted a grievance procedure consisting of four appellate steps which allowed an employee to protest any adverse management decision. Sayre timely initiated her grievance. She was denied relief at step one, an appeal to her immediate supervisor, Harold Wright. Sayre next invoked the provisions of step two by serving written notice on Billie Martinets, a Parkland department director. At the step two hearing, Sayre brought with her a Dallas attorney, Viki Livesay, and requested that Ms. Livesay be allowed to represent her in the step two hearing. Both Ms. Martinets and Eileen Beasley, the Parkland Assistant Director of Personnel, rejected the request. Further, Ms. Beasley threatened to have Ms. Livesay physically ejected from Parkland premises. Two days thereafter Sayre was advised by Ms. Martinets that she would not be reinstated.

The following day Sayre sought her step three relief by delivering to Doug Mehling, Patient Care Administrator of Surgery, a written communication in which she again requested reinstatement, coupled with an offer to take a polygraph test. Mehling responded by advising Sayre of the time and place of the step three hearing, and further wrote that should Sayre attempt to have an attorney represent her, the grievance procedures would end at step three. Sayre appeared at the step three hearing, held December 24, 1980, and read a statement. Apparently, she did not otherwise participate in the hearing in which she was afforded the personal right to conduct cross-examination of Dr. Valentine. Because of her refusal to otherwise participate, Sayre's request for a step four hearing was summarily denied by Dr. Mullins, and her termination from employment was upheld.

Parkland's grievance procedure provides that the aggrieved employee may have any other employee of the Dallas County Hospital District, except the hospital's attorney, serve as counsel for the employee during the grievance procedure. During argument of this case, Parkland's attorney conceded he knew of no other district employee who was an attorney. All parties agree that Sayre is a public employee subject to the provisions of Tex.Rev.Civ.Stat.Ann. art. 5154c (law prohibiting collective bargaining or strikes by public employees) because the Dallas County Hospital District is a political subdivision of this state.

Article 5154c was one of nine bills[3] passed by the 50th Legislature in 1947 which were designed to curtail labor organization activities in Texas. In addition to prohibiting collective bargaining by a labor organization for public employees and their right to strike, the law in section six provides:

> The provisions of this Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike.

It is appropriate to note that at no time did attorney Livesay claim the right to strike, and all Parkland officials involved concede she disavowed such right.

summary judgment relief. See *Teer v. Duddlesten*, 664 S.W.2d 702 (Tex.1984). Sayre's motion for summary judgment sought relief from all six defendants.

3. SB 167, SB 178, SB 269, SB 276, HB 22, HB 23, HB 41, HB 73, and HB 105.

The court of appeals, in interpreting article 5154c, conducted a semantics discussion, attempting to distinguish between "representative *that* does not claim" and "representative *who* does not claim." The appellate court concluded that the statute was not intended to cover representation by an individual but provided for group or organizational representation, only. Therefore, that court held that Sayre was properly denied an attorney. The court of appeals opinion does not explicitly say that the organizational representative is to be a labor union or other employee association, but those fellow employees eligible under hospital grievance procedures to represent Sayre realistically would be confined to such groups.

It is significant that before this court Parkland makes no effort to defend the court of appeals holding that "representative" means organizational representative. Parkland restricts its argument to the contention that employees are only entitled to representation when presenting a grievance that affects a category or group of employees as opposed to a grievance that is personal to an employee. Sayre contends that "representative" means any representative, without restriction on the number of employees involved in the grievance or the identity of the representative.

The subject statute's plain language seems to make it unnecessary to resort to ferreting out legislative intent as to the meaning of "representative." However, since the court of appeals has resolved this case on the basis of word construction, we will address legislative intent. A recall of the tenor of the times (public concern about labor unrest and strikes) [4] when Texas enacted these nine labor restrictive laws, and a review of the laws' contents, mandates the conclusion that the individual's right within labor's ranks was considered by the legislature to be paramount to the rights of a labor organization. *See, e.g.,* Tex.Rev. Civ.Stat.Ann. art. 5154e (no dues check-off without individual authorization); art. 5207a (no denial of employment on account

of membership or nonmembership in a labor organization); art. 5154b (monetary liability of labor unions to an employee adversely affected by illegal picketing); art. 5154d (protection of nonstriking employee from intimidation or insults by picketers); and, art. 7428 (repealed) (labor unions, but not individual employees, subject to the provisions of antitrust laws).

Moreover, the legislature aptly demonstrated in article 5154c that it knew how to say labor organization when it meant labor organization. The term "labor organization" appears four times in the preamble to the act (Act of April 29, 1947, ch. 135, 1947 Tex.Gen.Laws 231) and four times in the statute, itself. The term "representative" appears but once. Had the legislature desired to restrict who could present a grievance for a public employee, it would have been an easy enough matter to once again use the term "labor organization" instead of "representative." Further, had the legislature intended "representative" to mean "organizational representative," as was held by the court of appeals, then the words *"which* does not claim the right to strike" would have been included in the statute. "Which" clearly refers to things or impersonal aggregations of people. Texas Law Review, *Manual on Style* 2:14:54 (4th ed. 1979).

■ Although it sometimes becomes necessary, we are unimpressed by this attempt to gleen legislative intent from choice of words, and particularly in this case, the word "that." True, we have often said "shall" can mean "may," and vice versa. *See, e.g., Thomas v. Groebl,* 147 Tex. 70, 212 S.W.2d 625 (1948); *National Surety Corp. v. Ladd,* 131 Tex. 295, 115 S.W.2d 600 (1938); and, *American Mortgage Corp. v. Samuell,* 130 Tex. 107, 108 S.W.2d 193 (1937). But, in determining the meaning of words, such as "that" in the case at bar, "consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction." *Chisholm v. Bewley Mills,* 155

---

4. The Taft-Hartley Act was also passed by the

U.S. Congress in 1947.

Tex. 400, 403, 287 S.W.2d 943, 945 (1956). Indeed, this whole argument strikes us as repetitive of Humpty Dumpty's peroration to Alice, "[w]hen I use a word, it means just what I choose it to mean—neither more nor less."

Other appellate courts have also interpreted the meaning of "representative." In *Dallas Independent School District v. American Federation of State, County and Municipal Employees, Local Union No. 1442*, 330 S.W.2d 702, 707 (Tex.Civ. App.—Dallas 1959, writ ref'd n.r.e.), it was said that " 'representative' was used instead of labor union or labor organization so as to afford a wider choice of agency to the public employee." We agree. While Sandra Sayre had the right to choose a union official as her representative, she was not limited to a labor organization for representation. The right of a public employee under article 5154c to be represented by a union official at a grievance was upheld in *Corpus Christi American Federation of Teachers v. Corpus Christi Independent School District*, 572 S.W.2d 663 (Tex.1978). We reversed the court of appeals holding which ruled against union representation. *Corpus Christi Independent School District v. Corpus Christi American Federation*, 564 S.W.2d 477 (Tex.Civ.App.—Corpus Christi 1978). But, we left untouched the statement in the court of appeals opinion that the teacher was entitled to be represented by an attorney in the presentation of her grievance. *Id.* at 480. Considering the whole act, we conclude that an attorney may represent a grievant. It is ironic that the hospital seeks to prevent the major profession trained to represent clients from fulfilling its traditional function.

Turning to the argument that an employee is entitled to representation only when he presents a class-action type grievance, we note one of the primary purposes of article 5154c. That purpose was to prohibit collective bargaining for public employees. Collective bargaining is generally considered to be negotiations between management and unions over terms of work,

such as wages, hours of work, and conditions of employment. The legislature could hardly have intended on the one hand to deny collective bargaining, but on the other hand provide that the only grievances to be presented by a representative would be those involving multi-employee concerns about wages, hours of work, or conditions of work. The statute gives the right to public employees "individually" to present grievances. Pursuant to Tex.Rev.Civ.Stat. Ann. art. 10, we give the "ordinary signification" to "individually," it not being a word of art or word connected with a particular trade or subject matter. A grievance presented individually is one person's grievance. Moreover, one of the stated purposes in the preamble to what is now article 5451c was "to protect the individual rights of public employees to present grievances." 1947 Tex.Gen.Laws at 231. It thus follows that we reject the argument that article 5154c, section six, is restricted to group grievances. It is undisputed that termination of employment is a "condition of work." *Fibreboard Paper Products Corp. v. National Labor Relations Board*, 379 U.S. 203, 210, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964). Accordingly, Sandra Sayre's firing was a proper subject for the grievance process.

The grievance procedure of the Dallas County Hospital District is in violation of article 5154c. Persons outside of the district's employment, and specifically attorneys, cannot be denied the right to represent an aggrieved employee. Therefore, Sandra Sayre's motion for summary judgment should have been granted.

We reverse the judgments of the courts below and hold that the Dallas County Hospital District and its other defendant employees have violated the provisions of article 5154c. We remand this cause to the trial court for further proceedings.