Sheila DAVIS, Appellant

v.

**DALLAS COUNTY SCHOOLS,**
**Appellee.**

No. 05–07–00822–CV.

Court of Appeals of Texas,
Dallas.

June 17, 2008.

J. Mark Scarbrough, Johnathan F. Winocour, Winocour & Scarbrough, Richardson, for Appellant.

Joshua Skinner, Fanning, Harper & Martinson, P.C., for Appellee.

## OPINION

Opinion by Chief Justice THOMAS.

Appellant Sheila Davis[1] sued Dallas County Schools (DCS) alleging DCS terminated her employment in retaliation for filing a workers' compensation claim. DCS filed a plea to the jurisdiction, arguing the trial court did not have subject matter jurisdiction over this claim because appellant failed to exhaust her administrative remedies. The trial court granted the plea to the jurisdiction and dismissed the cause. We affirm the trial court's judgment.

In the first two issues, appellant contends the trial court erred because DCS's grievance procedures did not require her to exhaust any administrative remedies before filing a retaliatory discharge claim and, even if the procedures applied to her claim, she was excused from exhausting her administrative remedies because the remedies were inadequate. In issues three and four, appellant argues the time period for her to file her administrative complaint was tolled by the discovery rule and by DCS's fraudulent concealment of the status of her employment and that she timely exhausted her administrative remedies through correspondence sent by her counsel to DCS. In the final issue, appellant asserts the dismissal of her claim violated her constitutional right to open courts under the United States and Texas Constitutions.

## Factual Background

On September 15, 2005, appellant was injured while working as a bus driver for DCS. She was unable to return immediately to work and filed a workers' compensation claim.

At the time of the injury, DCS's policies permitted an employee to be on "Leave without Pay" for up to six months. On November 18, 2005, DCS changed its policy to limit the time an employee could be on "Leave without Pay" to no more than thirty days. On December 14, 2005, DCS sent appellant a letter informing her that her employment was terminated under the new policy because she had been on "Leave without Pay" for more than thirty days. On December 15, 2005, DCS decided to delay implementation of the new policy and to continue using the previous policy. Appellant asserts she was not notified of this decision.

From December 16, 2005 through January 2, 2006, DCS's offices were closed for the Christmas holidays. On January 3, 2006, appellant went to DCS's Human Resource Department and asked to withdraw her retirement funds because she had been terminated. Beverly Crathers, DCS's human resource manager, contends she told appellant the policy had been changed, appellant should disregard the termination letter and, by withdrawing the retirement funds, appellant would resign her employment. Crathers asserts appellant said she needed the money from her retirement funds and she was going to terminate her employment. Appellant claims Crathers asked only if she had received a second letter, but did not tell her the contents of that letter or that she had not been terminated. Appellant further alleges she did not tell Crathers she needed the money from her retirement funds.

To obtain her retirement funds, appellant completed a Teacher Retirement System of Texas Form TRS 6–Notice of Final Deposit and Request for Refund and the

---

1. All trial court pleadings and the notice of appeal identify appellant as Shelia Davis. However, on appeal, appellant identifies herself as Sheila Davis, and we use that spelling of her first name in this opinion and accompanying judgment.

Dallas County Schools Termination Notice, which needed to be signed by the area director, Bob Chapman. Appellant took the form and went to speak to Chapman and Virginia Owens, her direct supervisor, about her employment. Appellant contends both Chapman and Owens refused to sign the form because she had already been terminated and that Owens told her she was terminated as of December 12, 2005.

Appellant returned the unsigned form to Crathers. Crathers asserts she again told appellant that if she withdrew her retirement funds, appellant would be resigning her employment. Appellant claims she would never have withdrawn her retirement funds if Owens had not told her she had been terminated. Crathers took the prior termination notice, signed by Chapman on December 14, 2005, and changed it to indicate appellant had resigned and the termination had been rescinded.

On January 11, 2006, appellant's attorney sent a letter to Chapman, asking him to confirm whether appellant had been terminated on December 14, 2005. On January 18, 2006, Crathers responded to the letter, indicating appellant resigned on January 3, 2006. On January 23, 2006, appellant's attorney sent a letter to Crathers, alleging appellant had been terminated for filing a workers' compensation claim. On September 12, 2006, appellant filed this suit.

### Standard of Review

■ A plea to the jurisdiction challenges a trial court's subject matter jurisdiction. *See Houston Mun. Employees Pension Sys. v. Ferrell,* 248 S.W.3d 151, 156 (Tex.2007); *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004). We review a trial court's order granting a plea to the jurisdiction de novo. *Ferrell,* 248 S.W.3d at 156; *Mi-*

*randa,* 133 S.W.3d at 226. In performing this review, we do not look to the merits of the case, but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *Miranda,* 133 S.W.3d at 226; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

### Availability of Administrative Remedies

■ Appellant first contends the trial court erred in granting the plea to the jurisdiction because there were no administrative remedies she was required to exhaust. We disagree.

■ Appellant asserts DCS unlawfully terminated her employment because she filed a workers' compensation claim. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon 2006) ("A person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith ..."). An employee's failure to exhaust administrative remedies before bringing a retaliatory discharge claim based on section 451.001 "deprives the trial court of jurisdiction over that cause of action." *Dallas County v. Gonzales,* 183 S.W.3d 94, 107 (Tex.App.-Dallas 2006, pet. denied). Therefore, appellant was required to exhaust any applicable administrative remedies before filing suit on her retaliatory discharge claim.

Under DCS's grievance process, a DCS employee is required to file a complaint within twelve business days of the complained-about conduct. The complaint is then considered by the employee's direct supervisor. If the employee is not satisfied with the initial resolution of the complaint, the employee has two additional appeals to the next level supervisor and to the superintendent. The process includes grievances concerning:

- an employee's wages, hours,

- conditions of work, or
- specific allegations of unlawful discrimination in employment on the basis of sex (including allegations of sexual harassment), race, national origin, age, or disability, or
- on the basis of the employee's exercise of constitutional rights.

Relying on the majority opinion in *Dallas Independent School District v. Powell,* 68 S.W.3d 89 (Tex.App.-Dallas 2001, no pet.), Davis argues her retaliatory discharge claim does not fall under any of these categories.

In *Powell,* this Court considered whether an employee of the school district was required to exhaust his administrative remedies prior to filing a retaliatory discharge claim under section 451.001 of the labor code. The school district's grievance policy stated all employees had the right to "present grievances concerning their wages, hours of employment, or conditions of work." *Id.* at 90. The majority concluded a "grievance procedure for 'wages, hours of work, or conditions of work' does not include complaints regarding retaliatory discharge for filing a workers' compensation claim" and, accordingly, the employee was not required to exhaust any administrative remedies prior to filing suit. *Id.* at 91. However, relying on *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) and *Sayre v. Mullins,* 681 S.W.2d 25 (Tex.1984), DCS argues that "[r]egardless of [the school district's] failure to properly present their case in *Powell,* [DCS] demonstrated to the trial court that 'conditions of work' includes termination."

In *Fibreboard,* the United States Supreme Court addressed whether an employer was required by the National Labor Relations Act to engage in collective bargaining prior to replacing maintenance workers with independent contractors. The statute requires an employer to "confer in good faith with respect to wages, hours, and other terms and conditions of employment." *See* 29 U.S.C.A. § 158(d) (West 1998). The Supreme Court considered whether the phrase "terms and conditions of employment" encompassed the dispute and determined:

> A stipulation with respect to the contracting out of work performed by members of the bargaining unit might appropriately be called a "condition of employment." The words even more plainly cover termination of employment which, as the facts of this case indicate, necessarily results from the contracting out of work performed by members of the established bargaining unit.

*Fibreboard Paper Prods. Corp.,* 379 U.S. 203, 85 S.Ct. 398.

The Texas Supreme Court relied on *Fibreboard* in *Sayre* when it considered whether an employee of a public hospital was entitled under the Texas Right to Work laws to be represented by an attorney in the hospital's grievance process following the employee's termination.[2] In *Sayre,* the employee was terminated after exhibiting verbal disrespect for a doctor. The employee filed a grievance under the four-step procedure promulgated by the hospital. After the employee was denied relief at the first step, she appeared with an attorney at the level two hearing. The

**2.** The Texas Right to Work laws were enacted by the Texas Legislature in 1947 and codified in article 5154c of the Texas Revised Civil Statutes. In 1993, the Legislature repealed article 5154c and codified the Texas Right to Work laws in sections 617.001–.005 of the government code. *See* Tex. Gov't Code Ann. §§ 617.001–.005 (Vernon 2004). Section 6 of article 5154c, at issue in *Sayre,* was codified in section 617.005 of the government code with only minor changes.

hospital refused to allow the employee to be represented by counsel at either the level two or level three hearing. The employee's request for a level four hearing was denied.

The Texas Supreme Court noted the Right to Work laws were "designed to curtail labor organization activities in Texas." *Sayre*, 681 S.W.2d at 26. The laws prohibit collective bargaining by a labor organization for public employees, but provide:

> The provisions of this Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike.

Act of April 17, 1947, 50th Leg., R.S., ch. 135, § 6, 1947 Tex. Gen. Laws 231, 232, *repealed by* Act of April 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 686 (current version at Tex. Gov't Code Ann. § 617.005 (Vernon 2004)). The Court rejected the hospital's argument that the employee was not entitled to representation, stating "[i]t is undisputed that termination of employment is a 'condition of work.' Accordingly, [the employee's] firing was a proper subject for the grievance process." *Sayre*, 681 S.W.2d at 27 (citations omitted).

We see little relevant distinction between the termination of a public employee for alleged insubordination or the discharge of a group of employees in order to replace them with independent contractors on the one hand and appellant's claim she was terminated for filing a workers' compensation claim on the other. In all three situations, termination is a condition of work and subject to the grievance process. To the extent the majority opinion in *Pow-*

*ell* is in conflict with this conclusion, it is overruled.

DCS's grievance process encompassed the retaliatory discharge claim. Accordingly, appellant was required to exhaust her administrative remedies prior to filing suit. We overrule the first issue.

### Inadequacy of Available Remedies

■ Pointing to language in DCS's procedures requiring an employee to specify in the administrative complaint the individual harm suffered by the employee, appellant next argues her failure to exhaust her administrative remedies was excused because the remedies were inadequate. Appellant asserts DCS cannot contend she suffered an individual harm because it claims she was not terminated, but resigned.

In her affidavit, appellant stated she would have never withdrawn her retirement funds, and consequently resigned her employment, if Owens had not told her that she had been terminated on December 12, 2005. Therefore, it is clear her discharge was involuntary and she was required to initiate DCS's grievance process. *See Midland Indep. Sch. Dist. v. Watley*, 216 S.W.3d 374, 379–80 (Tex.App.-Eastland 2006, no pet.) (whether she was terminated or resigned, discharge was involuntary and teacher was required to exhaust administrative remedies prior to bringing claim under Texas Whistleblower Statute [3]). We overrule appellant's second issue.

### Exhaustion of Remedies

■ In issues three and four, appellant contends she timely exhausted her administrative remedies through two letters sent by her counsel to DCS on January 11, 2006 and January 23, 2006 and that she was

---

3. Tex. Gov't Code Ann. §§ 554.001–.010 (Vernon 2004).

required to do nothing further in the administrative process because DCS chose to refer the matter to its counsel rather than utilizing the grievance procedures. Appellant also argues that either the discovery rule or DCS's fraudulent concealment of the reason for her discharge and the status of her employment tolls the time period for filing a grievance until January 18, 2006.

 Assuming, without deciding, the period for filing her grievance was tolled by either the discovery rule or the doctrine of fraudulent concealment and that either of the letters sent by appellant's counsel complied with the requirements for filing an administrative complaint, appellant still failed to exhaust her administrative remedies. Counsel's letter would, at best, initiate the first stage of DCS's grievance process. It is undisputed appellant did not invoke either of the two levels of appeals. Although appellant claims DCS waived the requirement that she exhaust her administrative remedies by directing that all future communications be sent to DCS's counsel, jurisdiction cannot be conferred by waiver or estoppel. *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 354 (Tex.2005) (subject matter jurisdiction cannot be conferred by waiver); *Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294–95 (Tex.2001) (per curiam) ("A party cannot by his own conduct confer jurisdiction on a court where none exists. Even if the District misled Sullivan as she claims, her failure to exhaust her administrative remedies is fatal to her action."). Therefore, we overrule the third and fourth issues.

### Open Courts Provision

 In the fifth issue, appellant argues the dismissal of her claim violates her right of access to the courts guaranteed by both the federal and state constitutions.

As a general rule, a party is required to present a complaint to the trial judge before being allowed to raise the issue on appeal. Tex.R.App. P. 33.1; *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex.2003). Appellant did not argue in the trial court that the dismissal of her claim violated her constitutional rights to open courts. Accordingly, she has waived this argument on appeal. We overrule appellant's fifth issue.

We affirm the trial court's judgment.